Samuel INSULL, Plaintiff-appellant,

v.

NEW YORK, WORLD–TELEGRAM COR-PORATION, a New York corporation, et al., Defendants-appellees.
No. 12681.

United States Court of Appeals
Seventh Circuit.

Dec. 30, 1959.

Floyd E. Thompson, Kenneth J. Burns, Jr., Chicago, Ill., Keith F. Bode, Chicago, Ill., Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., of counsel, for appellant.

Howard Ellis, Don H. Reuben, James E. Beaver, Keith Masters, Chicago, Ill., Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Samuel Insull, herein called plaintiff, a citizen and resident of Illinois, brought an action for libel in an Illinois state court against the corporate owners and publishers of publications described as Scripps-Howard daily newspapers, and the individual editors thereof.[1] No defendant is a citizen or resident of Illinois. Charles T. Lucey, the author of the libelous article appearing in the Scripps-Howard newspapers published by the corporate defendants, is a defendant.

Summons was served outside the state of Illinois on each defendant, together with a copy of the complaint, in accordance with § 16, ch. 110, R.S.Ill.1957.

Defendants procured the removal of the case to the district court and then moved to dismiss the cause on the ground that the court "lacks jurisdiction over the persons" of defendants. The court granted the motion, 172 F.Supp. 615, and from an order to that effect, plaintiff appeals.

1. We have reserved our ruling on a motion by defendants to dismiss the appeal on the ground that the action herein is barred because of these facts:

In the United States District Court for the Western District of Tennessee, since the filing of the case at bar, plaintiff sued Memphis Publishing Company and the complaint and answer therein raised the same issues as were raised in this case. Upon a trial, a jury found the issues in favor of defendant, and judgment for defendant was entered, which judgment has become final.

We believe defendants mistakenly urge that this judgment is *res judicata* as to all the defendants here. The charge of libel against Memphis Publishing Company in the Tennessee suit is entirely distinct from the charge of libel by publication by the other defendants named in the complaint herein. Identity of causes of action is essential to a plea of *res judicata*. Troxell v. Delaware, L. & W. Ry. Co., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586; Holland v. Forcum-James C. & L. Co., 154 Tenn. 174, 285 S.W. 569; Sweeting v. Campbell, 2 Ill.2d 491, 496–497, 119 N.E.2d 237.

Nor can defendants' motion be sustained on the doctrine of estoppel by finding or verdict. A former judgment does not operate as an estoppel by verdict in a second action except where it is clear from the record that a specific material and controlling fact common to both cases was litigated and determined in the first case. Chicago Theological Seminary v. People, 189 Ill. 439, 443–444, 59 N.E. 977; People ex rel. v. Wyanet Elec. Light Co., 306 Ill. 377, 383, 137 N.E. 834; Hoffman v. Hoffman, 330 Ill. 413, 418, 161 N.E. 723; Prudential Ins. Co. of America v. Zorger, 7 Cir., 86 F.2d 446, 108 A.L.R. 498; Harris v. Mason,

| 1. Corporate Defendant | Editor Defendant | Newspaper |
|---|---|---|
| New York World-Telegram Corporation | Roy W. Howard | The New York World-Telegram and The Sun |
| Memphis Publishing Company | Edward J. Meeman | The Memphis Press-Scimitar |
| E. W. Scripps Company | Louis B. Seltzer | The Cleveland Press |
| Indianapolis Times Publishing Company | Walter Leckrone | The Indianapolis Times |
| E. W. Scripps Company | Dick Thornburg | The Cincinnati Post |
| Herald-Post Publishing Company | Edward M. Pooley | The El Paso Herald-Post |
| Knoxville News-Sentinel Publishing Company | Loye W. Miller | The Knoxville News Sentinel |
| Pittsburgh Press Company | Weldman W. Forster | The Pittsburgh Press |
| New Mexico State Tribune Company | Dan Burroughs | The Albuquerque Tribune |

120 Tenn. 668, 115 S.W. 1146, 25 L.R.A., N.S., 1011. The rule is well stated in the Wyanet Electric Light Co. case, where the court said 306 Ill. at page 383, 137 N.E. at page 836:

"It is absolutely necessary, in order that a former judgment should operate as an estopped [sic] by verdict, that there shall have been a finding of a specific fact in such former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on this point by reason of the fact that more than one distinct issue of fact is presented to the court the estoppel will not be applied, and for the reason that the court may have decided it upon one of the other issues of fact.

There is nothing properly before this court which shows what fact was found which resulted in the verdict against plaintiff in the Memphis case. Indeed, the verdict of the jury might have been based on a finding that plaintiff had not proven that he had a general reputation in the Memphis area or that he had not proven that his reputation was damaged by the Memphis publication. The jury could have concluded that the article referred to plaintiff but that their verdict should be for defendant because plaintiff did not prove he was damaged by the Memphis article.

We see no impelling reason for dismissing this appeal and the motion of defendants is denied.

**2.** Plaintiff bases his claim that the district court had jurisdiction of defendants on section 17 of the Illinois Civil Practice Act, § 17, ch. 110, R.S. Ill.1957, which reads:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;

"(b) The commission of a tortious act within this State; * * *

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section. * * * "

If plaintiff is correct in his claim as to the meaning and application of § 17 to this case, it is undisputed that service of summons on defendants was made in compliance with § 16(1) and (2) of said Act.

The controlling facts appear in affidavits filed in the district court:

The corporate defendants are incorporated and have their principal places of business in states other than Illinois. Their respective newspapers are published in states other than Illinois. No corporate defendant is licensed to do business in Illinois or has a registered agent in Illinois or maintains an office in Illinois or is listed in any Illinois telephone or business directory. No corporate defendant employs an agent who is permanently located in Illinois or maintains assets or has a bank account in Illinois. No individual defendant personally owns or operates any business in Illinois and none resides in Illinois.

Each of the defendant companies sends a number of copies of its respective newspaper into Illinois each day. Some of these copies are mailed directly to subscribers, and others are sold to the Illinois public through a wholesale distributor and from newsstands. All payments by subscribers, wholesalers and newsstand operators are mailed to the respective principal offices of the several publishing companies outside Illinois. The distributors also circulate newspapers other than those of defendants, the several defendants have no financial interest in or control over the formers' enterprises, they are independent contractors which purchase newspapers for their own accounts, receive them by mail from outside Illinois, and do not account to defendants for the proceeds of sales. Each corporate defendant publishes a newspaper from without the state of Illinois; all defendants' printing occurs outside Illinois; each defendant first distributes its particular newspaper without Illinois and within the city of printing; distribution elsewhere than in the city of printing is always made *subsequent* to distribution in the city of printing; payment to the defendants for papers shipped and any orders that might be received for papers are all transmitted to defendants' principal offices for receipt and acceptance; no collections or subscription activities whatsoever are carried on by any of the corporate defendants within Illinois; the corporate defendants' newspapers are circulated in Illinois only by independent news vendors, independent wholesalers, and mailings from without the state; no circulation whatsoever is made within the state by any of the defendants. The extent of the defendants' newspapers' circulation in Illinois is summarized thus: average number of defendants' newspapers mailed daily to Illinois subscribers from without the state: New York World-Telegram and The Sun 37; Memphis Press-Scimitar 35; The Indianapolis Times 25; Cleveland Press 29; Cincinnati Post 23; El Paso Herald-Post 6; Knoxville News-Sentinel 18;

The Pittsburgh Press 29; The Albuquerque Tribune 8.

Average number of defendants' newspapers mailed daily to independent newsdealers in Illinois from without the state:

New York World-Telegram and The Sun ....................... 2
Memphis Press-Scimitar ...... 1
The Indianapolis Times ........ 4.5
Cleveland Press .............. 4
Cincinnati Press .............. 4
El Paso Herald-Post .......... 1
Knoxville News Sentinel ...... 1.3
The Pittsburgh Press ........ 8
The Albuquerque Tribune .... 1

Average number of defendants' newspapers mailed daily to an independent wholesaler in Illinois from without the state:

New York World-Telegram and The Sun ....................... 19

None of the corporations employs or has any reporters, advertising solicitors or other persons who are located in Illinois; none of the corporations owns or maintains any assets (either realty or personalty) in Illinois; none of the corporations has a bank account in Illinois.

Upon the foregoing facts, plaintiff contends that defendants—

"are within the reach of 'the transaction of any business' provisions of § 17(1) (a). For an indefinite period of time each has sold its newspapers to the Illinois public by subscription or through distributors or newsstands which are themselves subscribers. Indeed, it is fair to infer from the affidavits of the publishing companies that there is a continuing relationship between them and their respective subscribers, which is no doubt based upon subscription agreements. In any event, the several defendants know and intend that their papers will reach the Illinois public. This day-to-day entrance into the Illinois market produced the circulation of the libelous article in Illinois, to the substantial injury of plaintiff. The

**170**

subscribers were those to whom the libel was first published in this state.

"The obvious significance of these contacts cannot be minimized on the theory that none of the defendants or their agents physically entered Illinois.

\* \* \* \* \* \*

"The statutory requirement is not that defendants be 'present' in Illinois or even that they 'do business' here in the general sense. It is sufficient if, by whatever means, they transact 'any business' in the State.

'  "To conclude that the defendants transact no business in this state is to ignore reality. \* \* \*"

After citing McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Wanamaker v. Lewis, D.C., 153 F.Supp. 195; WSAZ, Inc. v. Lyons, 6 Cir., 254 F.2d 242; and French v. Gibbs Corp., 2 Cir., 189 F.2d 787, plaintiff asserts that—

"defendants in the case at bar transact sufficient business in this state that it is not unfair to subject them to suit here. Their physical presence in Illinois is not required as a prerequisite to this result, and even if it is, each of them is 'present' here by virtue of the use of the mails as the agency whereby their newspapers are delivered in this state. Since they have so conducted this phase of their businesses, they cannot hide behind the fact that deliveries are made by the Post Office. The Post Office may properly be regarded, as it was by Judge Hand, as the agent of each of the defendants."

The question which arises under § 17 (1) (a) is whether the facts reveal that defendants transacted any business within the state of Illinois. We have already passed on a similar question in Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908, certiorari denied Schmidt v. Crowell-Collier Pub. Co., 348 U.S. 819, 75 S.Ct. 31, 99

L.Ed. 646. We said, 210 F.2d at page 916:

" \* \* \* Esquire, Inc., is a corporation foreign to the State of Indiana and is not licensed nor admitted to do business there. It publishes the Esquire and Coronet magazines, which are available in Indiana either through subscription or at the newsstand. These magazines are printed in Chicago and are mailed directly from there to Indiana subscribers. They are placed on newsstands in Indiana by the Curtis Circulation Company, an independent corporation which purchases the magazines from Esquire and effects distribution through independent wholesale organizations. Esquire has no office of any kind in Indiana, and it has no employees or agents there to gather material for publication, nor to solicit advertising, subscriptions or newsstand sales.

"Under these facts, we do not see how it can seriously be contended that Esquire was amenable to suit in Indiana. \* \* \* Obviously, the necessary contacts with the state are absent here."

We adhere to our ruling in that case.

Our interpretation of § 17(1) (a) is consistent with the holding in Grobark v. Addo Machine Co., Inc., 16 Ill.2d 426, 158 N.E.2d 73.

Among the many cases which are authority for the proposition that a foreign publishing corporation is not transacting business in a state because it ships its periodicals into the state to subscribers or to independent contractors for resale, are the following: Street & Smith Publications, Inc. v. Spikes, 5 Cir., 120 F.2d 895, 897–898, certiorari denied 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 524; Deighan v. Beverage Retailer Weekly & Trade Newspaper Corp., 16 A.2d 612, 613–614, 18 N.J.Misc. 705; Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133, 139–140; Whitaker v. MacFadden Publications, Inc., 70 App.D.C. 165, 105 F.2d 44–45; Cannon v. Time, Inc., 4 Cir.,

115 F.2d 423, 425–426; Putnam v. Triangle Publications, Inc., 245 N.C. 432, 96 S.E.2d 445, 450–454.

Moreover, there is no legal basis for holding the editor defendants personally liable on the theory that they transacted any business in Illinois. Plaintiff does not even suggest a basis for such a holding.

On the other hand, our recent case of National Gas Appliance Corp. v. AB Electrolux, 7 Cir., 270 F.2d 472, affords an example of what amounts to "the transaction of any business within this State."

[5] 3. Also relying on this language in § 17(1) (b): "The commission of a tortious act within this State", plaintiff maintains that the—

> "several defendants published the libelous article in Illinois by virtue of the sales by them of their respective newspapers to their respective Illinois subscribers, including the wholesalers and newsstands. We need not be concerned at this time with what those subscribers did with the newspapers after they received them in the mails, since upon receipt in Illinois, the several libels were complete so far as this state is concerned. Therefore, while it is true that not all of the tortious acts complained of occurred in Illinois, since publication of each newspaper also occurred elsewhere, this state is nevertheless the situs of a significant portion and, moreover, is the most significant situs of injury in view of plaintiff's residence here."

Upon the same facts which we have found inadequate to prove defendants transacted any business within Illinois, plaintiff now asks us to hold that all of the defendants committed a tortious act there.[2] None of the defendants either personally or through an agent was present in Illinois. Cf. Nelson v. Miller, 11 Ill.2d 378, 393, 143 N.E.2d 673, 681.

Plaintiff argues that "each publication of the Lucey article is a separate tort and the subject of a separate cause of action" and also that "it is well settled that the place of wrong, or the place where the last event necessary to make the defendant liable in tort occurs, is 'where the defamatory statement is communicated', and not the place 'from which the offending material is sent or where it originates.'" He adds that the "several torts were nonetheless committed when the newspapers were received in Illinois after having been mailed by the defendants."

In substance, plaintiff argues that the appearance of defendants' papers in Illinois is the "last event necessary to make the defendant liable in tort". That this is a mistaken conclusion is established by Illinois law. In Winrod v. Time, Inc., 334 Ill.App. 59, 65–72, 78 N.E.2d 708, 710–714, leave to appeal denied 336 Ill. App. xiv, it was held that in cases of multi-state circulation of periodicals the cause of action for libel is absolutely complete at the time of first publication; subsequent appearances or distributions of the periodicals are of no consequence whatsoever to the creation or existence of the cause of action but are only relevant in computing damages.[3] To the same effect was our holding in Winrod v. MacFadden Publications, Inc., 7 Cir., 187 F.2d 180, 182, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616.

It follows that the facts in this record show no tortious act committed within Illinois and hence jurisdiction under § 17 (1) (b) could not attach. Of course, plaintiff would have had a right to sue in the states where the libel was published, a right of which he took advantage when he sued one of the defendants herein in the federal district court at

---

2. Cf. Putnam v. Triangle Publications, Inc., 245 N.C. 432, 96 S.E.2d 445, 454.

3. On oral argument Winrod v. Time, Inc. was said to be limited to the defense of

the statute of limitations. An inspection of that decision reveals that the rationale of that case is directed at a multiplicity of suits, as well as suits barred by the statute of limitations.

Memphis, Tennessee as hereinbefore referred to.

For the reasons stated, the judgment of the district court is affirmed.

Affirmed.