Melvin F. BEATY, to his own use and to
the use of United States Fidelity and
Guaranty Company

v.

M. S. STEEL COMPANY, Inc.

Raymond A. GRAINGER, to his own use
and to the use of United States Fi-
delity and Guaranty Company

v.

M. S. STEEL COMPANY, Inc.

Civ. Nos. 18001, 18002.

United States District Court
D. Maryland.

Dec. 5, 1967.

Sidney Blum and William H. Hicks,
Baltimore, Md., for plaintiffs.

Patrick A. O'Doherty, Baltimore, Md.,
for defendant.

HARVEY, District Judge:

In Hardy v. Rekab, Inc., D.C., 266 F. Supp. 508 (D.Md.1967), Judge Kaufman, pursuant to the provisions of Rule 4(e) of the Federal Rules of Civil Procedure and the Maryland "long arm" statute, § 96, Art. 75, Maryland Annotated Code (1965 Repl. Vol.),[1] upheld this Court's diversity jurisdiction over an Oregon manufacturer which sold an amusement ride within the state of Maryland. The pending two cases involve the applicability of the same Maryland statute to a foreign manufacturer of fabricated bar joists being installed at a construction site at Sparrows Point, Maryland.

---

1. Portions of that statute pertinent to the pending cases read as follows:
"§ 96(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's
   (1) transacting any business in this State;
        *       *       *       *       *
   (3) causing tortious injury in this State by an act or omission in this State;

   (4) causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State;
   (5) having an interest in, using, or possessing real property in this State;
* * *."

The plaintiff in the Hardy case was a minor child who sought damages from both the owner of a Maryland amusement park and the Oregon manufacturer for personal injuries sustained as the result of a ride on an amusement concession known as a "Paratrooper." As to the Oregon manufacturer, the complaint charged in six separate counts various acts of negligence, breach of warranty and strict liability. Allegations in two of the counts that the foreign manufacturer assembled, repaired and serviced the ride were found by this Court sufficient to support jurisdiction under § 96(a) (3) of Article 75. Jurisdiction of the other four counts was upheld under § 96(a) (1), in view of affidavits filed in the case indicating that the foreign manufacturer during the period from 1957 to 1963 had sold five amusement devices for use in Maryland, that in at least two instances delivery was made in Maryland partially by such manufacturer, and that in at least one instance a representative or employee of such manufacturer supervised the installation in Maryland. This Court further held that jurisdiction over this foreign manufacturer existed with regard to three of these counts and perhaps also as to the fourth under § 96(a) (3) or § 96(a) (4) or both.

In the pending cases, both plaintiffs were employed as iron workers by Bernaby Steel Company. Both allege that while working on fabricated bar joists on the premises of the Bethlehem Steel Company at Sparrows Point, Maryland, the joists collapsed, and the plaintiffs fell to the ground suffering disabling injuries. It is further alleged in each case that the defendant, a manufacturer of steel located in Fort Payne, Alabama, negligently manufactured the bar joists and that such negligence caused the injuries sustained by the two plaintiffs, entitling them to substantial damages.

In both cases, service of process was made upon the State Department of Assessments and Taxation.

Motions to dismiss have been filed on behalf of the defendant in both cases together with affidavits executed by its President. It is stated in the affidavits that the defendant is an Alabama corporation not licensed to do business in the state of Maryland, that the company did not prior to the date of the accident transact business within the state nor has such business been transacted since, and that the bar joists in question were contracted for by telephone by a jobber in Boston, Massachusetts, were consigned to Brown and Matthews Construction Company, Sparrows Point, Maryland, and were shipped prepaid from Fort Payne, Alabama. At the hearing on such motions, the plaintiffs requested and were granted permission to file in opposition to these affidavits of the defendant corporation counter-affidavits relating to contacts that such defendant had with the state of Maryland. No such affidavits were filed within the time allowed, but instead plaintiff submitted a memorandum urging that under Gray v. American Radiator and Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), this Court on the record presently before it has jurisdiction in both cases.

In the *Gray* case, an Illinois resident, claiming negligent manufacture, sued an Ohio corporation to recover for injuries sustained as a result of the explosion in Illinois of a water heater. The defendant corporation had manufactured a safety valve in Ohio and had sold it to a firm in Pennsylvania where the heater itself had been assembled for eventual sale in Illinois. Finding that under the applicable jurisdictional statute the tort was committed in Illinois, the Supreme Court of Illinois upheld jurisdiction over the Ohio defendant.[2]

2. Before the *Gray* decision was handed down, the Federal Courts in Illinois had reached a contrary conclusion, holding that the statute did not sanction jurisdiction over a foreign manufacturer whose wrongful act outside the state caused an injury within the state. Hellriegel v. Sears Roebuck & Co., 157 F.

If the Maryland "long arm" statute were identical with that of Illinois and if the *Gray* decision were the law of Maryland, undoubtedly this Court would have jurisdiction ever the foreign manufacturer named as defendant in these two cases. However, § 96 of Article 75 differs in several important respects from the Illinois statute. Furthermore, the Maryland Court of Appeals has not had occasion to decide if it would follow the *Gray* case in construing the subsections of the Maryland enactment involved here.

Three recent Maryland cases have considered jurisdictional questions arising under § 96 cf Article 75 or related statutes. In Gilliam v. Moog Industries, Inc., 239 Md. 107, 210 A.2d 390 (1965), the Court did not decide whether there was jurisdiction under the new Maryland "long arm" statute (effective June 1, 1964) because the question had not been properly presented to and decided by the trial court. However, the Court did quote § 96(a) in its entirety and made the following comment at page 111, 210 A.2d at page 392:

> "It seems clear that the purpose of the Legislature in enacting these new provisions was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme Court in cases such as International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283."

In Van Wagenberg v. Van Wagenberg, 241 Md. 154, 215 A.2d 812 (1966), the Court considered whether the term "transacts any business within the state" in the New York "long arm" statute applied to the doing by a husband in a mari-tal dispute of certain acts in New York, including the execution of a separation agreement. In construing the New York statute, the Maryland Court of Appeals relied upon the decision of the New York Court of Appeals in Feathers v. McLucas, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E. 2d 68 (1965). In that case, the plaintiffs had brought a tort action for injuries sustained as a result of an explosion in New York of a tank manufactured by a foreign corporation in Kansas. The Court held that the New York statute conferring personal jurisdiction over a non-domiciliary committing a tortious act within the state did not include the commission of a tortious act without the state which caused injury within it and expressly declined to follow the *Gray* case. In discussing the constitutionality of the New York statute, the Maryland Court discussed and applied the test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) in finding that the husband's contacts with New York were sufficient.

Novack v. National Hot Rod Association, 247 Md. 350, 231 A.2d 22 (1967) upheld Maryland jurisdiction under § 96 of Article 75 over a California non-profit corporation which sponsored and operated automobile drag races within the state. The Court found that the foreign defendant transacted business in Maryland within the meaning of subsection (a) (1) when its regularly employed agent inspected the Maryland track and certified it as in accord with the national association's standards. It further found that the foreign defendant engaged in a persistent course of conduct in Maryland under subsection (a) (4) in sending its agent into the state on five occasions within the period of little more than a year to inspect and certify the track.

The particular portions of the statute relied upon by the plaintiffs in these two cases are subsections (a) (1), (a) (3), (a) (4) and (a) (5) of § 96, Article

Supp. 718 (N.D.Ill.1957); Trippe Mfg. Co. v. Spencer Gifts, 270 F.2d 821, 823 (7th Cir. 1959); Insull v. New York World-Tel. Corp., 273 F.2d 166, 171 (7th Cir. 1959).

75.[3] Subsection (a) (1) relates to jurisdiction as to a cause of action arising from a foreign corporation's "transacting any business in this State".[4] Clearly, the defendant in these cases was not transacting any business in the state of Maryland at the time of the injuries sustained by the plaintiffs. Unlike Hardy v. Rekab, Inc., supra, there are no allegations or affidavits indicating that the foreign manufacturer has over a period of years sold other products to purchasers in Maryland, or that any delivery of the building materials in question was made by the foreign manufacturer itself in Maryland, or that any of its employees supervised installation or delivery of such materials. The affidavits in the pending cases establish that the contract of purchase was arranged by a jobber in Massachusetts by means of a telephone call and that the products in question were shipped prepaid from Alabama to the construction company at the job site. Although the factual requirements for "transacting business" are undoubtedly less than those for "doing business", the mere shipment of a product into Maryland under the circumstances of these cases does not satisfy the test established by subsection (a) (1).

Subsection (a) (5) is similarly inapplicable. It confers jurisdiction as to a cause of action arising from a foreign corporation's "having an interest in, using, or possessing real property in this State". The sale by a foreign manufacturer of materials through a foreign jobber to a contractor engaged in building operations in Maryland hardly gives the manufacturer such an interest in the underlying real estate involved as to be subject to suit with the state under subsection (a) (5).

Subsections (a) (3) and (a) (4) are the portions of the statute most pertinent here. Subsection (a) (3) provides for jurisdiction as to a cause of action arising from a foreign corporation's "causing tortious injury in this State by an act or omission *in this State*" (Emphasis added). Subsection (a) (4) provides for jurisdiction as to a cause of action arising from a foreign corporation's "causing tortious injury in this State by an act or omission *outside the State* if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State" (Emphasis added). The Illinois statute involved in the *Gray* case provided for jurisdiction as to any cause of action arising from the "commission of a tortious act within this State". Ill.Stat. Ann. c. 110, § 17(1) (b). In *Gray*, the court held that the alleged negligence in manufacturing the valve in question could not be separated from the resulting injury and that since the place of a wrong is where the last event takes place which is necessary to render the actor liable, the tort therefore was committed in Illinois.[5]

In enacting both subsections (a) (3) and (a) (4), the Maryland Legislature carefully distinguished between tortious injury caused by an act in this State and tortious injury caused by an act outside the State. As to the latter, one of three requirements must be satisfied if there is to be jurisdiction, namely, regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from food or services used or consumed in the State. The Illinois statute contains no counterpart to subsection (a) (4) of the Maryland statute. It was therefore not necessary for the court in the *Gray* case to find that the absent defendant satisfied one of the three requirements set forth in the Maryland statute.

---

3. A comprehensive analysis of the various subsections of § 96, Article 75 may be found in Auerbach, The "Long Arm" Comes to Maryland, 26 Md.L.Rev. 13, 31–46 (1966).

4. Under § 94, the word "person" in § 96 includes a corporation or other entity whether or not a citizen or domiciliary of Maryland and whether or not organized under the laws of the state of Maryland.

5. This argument was termed "unconvincing" by the New York Court of Appeals in Feathers v. McLucas, supra.

The Maryland statute is based on Article 1 of the Uniform Interstate and International Procedure Act. 9B U.L.A. 307–315 (1955 Ed.). In particular, § 96(a) of the Maryland enactment is derived from § 1.03(a) of the Uniform Act.[6] The Commissioners' Note observes that subsection (a) (3) may have a narrower range than statutes such as that in Illinois which base jurisdiction upon the "commission of a tortious act" within the state. 9B U.L.A. 312 (1966 Ed.). As to subsection (a) (4), the Note states that the "rule is more restrictive than the Illinois statutes, as interpreted in Gray v. American Radiator & Standard Sanitary Corp., [22 A.2d 432, 176 N.E. 2d 761] * * *".

Although the Maryland statute follows the Uniform Act in substantial part, it in turn is slightly more restrictive than the Uniform Act. The third requirement of subsection (a) (4) of the Maryland enactment covers the deriving of substantial revenue "from food or services used or consumed in this State" while the Uniform Act includes the deriving of such revenue from "goods used or consumed or services rendered in the state." In other words, even if the record in a particular case did indicate that the non-resident defendant derived substantial revenue from steel products used in Maryland, such facts would not satisfy this third requirement of subsection (a) (4) and thereby give the Maryland courts jurisdiction over such foreign manufacturer.

In the opinion of this Court, subsection (a) (3) has no application to the pending two cases, inasmuch as the acts of negligence alleged did not occur in this state. Furthermore, the facts here do not satisfy any one of the three requirements of subsection (a) (4). The defendant in these cases was not regularly doing or soliciting business in

Maryland nor was it engaging in any other persistent course of conduct in this state. As a manufacturer of steel products, this non-resident defendant did not derive revenue from food or services used or consumed in Maryland.

Furthermore, although the precise question has not as yet been presented to the state or Federal courts in Maryland, this Court concludes that the *Gray* case would not be followed by the Maryland Court of Appeals. It would offend traditional notions of fair play and substantial justice to hold that a non-resident corporation could be sued in Maryland merely because on one occasion its product manufactured in another state was shipped into and used within this state. As the Supreme Court said in Hanson v. Denckla, 357 U.S. 235 (1958) at page 253, 78 S.Ct. 1228, 1240, 2 L.Ed. 2d 1283:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

In Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502 (4th Cir. 1956), the United States Court of Appeals for the Fourth Circuit considered the jurisdictional power of the state of North Carolina to subject a foreign corporation to the processes of its courts. The statute in question gave the North Carolina courts jurisdiction over foreign corporations not transacting business in the state on any cause of action arising out of the production, manufacture or dis-

---

6. Subsections (a) (3) and (a) (4) of the Uniform Act provide for jurisdiction over a person as to a cause of action arising from the person's
   "(3) causing tortious injury by an act or omission in this state;
   "(4) causing tortious injury in this

state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state".

tribution of goods by such corporation with the reasonable expectation that those goods were to be used in the state and were so used, regardless of how or where the goods were produced, manufactured or sold, or whether or not through the medium of independent contractors or dealers. A North Carolina purchaser of yarn sought to sue the New York manufacturer in the District Court in North Carolina. The contract was made in New York with the understanding that the yarn would be used in the plaintiff's North Carolina plant and the goods were shipped f. o. b. New York. The Court said that the question for determination was whether the statute might validly subject the foreign manufacturer to the jurisdiction of North Carolina for a single sale consummated in New York with the reasonable expectation that the goods would be used in North Carolina and where the goods were so used and consumed. In finding that the defendant had insufficient contacts with the forum state to satisfy the requirements of due process and in holding the North Carolina statute invalid as applied, Judge Sobeloff said the following at page 507:

"The orderly and fair administration of the laws throughout the nation is a highly important factor to consider. Davis v. Farmers' Cooperative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996; International Shoe Co. v. State of Washington, supra, 326 U.S. [310] at page 319, 66 S.Ct. [154] at page 159, [90 L.Ed. 95]. We cannot shut our eyes to the disorder and unfairness likely to follow from sustaining jurisdiction in a case like this. It might require corporations from coast to coast having the most indirect, casual and tenuous connection with a State to answer frivolous law suits in its courts. To permit this could seriously impair the guarantees which due process seeks to secure."

That a somewhat different rule has been followed by Federal courts in this Circuit from that laid down in the *Gray* decision was recognized by the Supreme Court of Illinois in its opinion in that case. At page 767 of 176 N.E.2d, the Court said the following:

"We are aware of decisions, cited by defendant, wherein the opposite result was reached on somewhat similar factual situations. See Erlanger Mills, Inc., v. Cohoes Fibre Mills, Inc., 4 Cir., 239 F.2d 502; Hellriegel v. Sears Roebuck & Co., D.C.N.D.Ill.E.D., 157 F. Supp. 718; Johns v. Bay State Abrasive Products Co., D.C.D.Md., 89 F. Supp. 654. Little purpose can be served, however, by discussing such cases in detail, since the existence of sufficient 'contact' depends upon the particular facts in each case. In any event we think the better rule supports jurisdiction in cases of the present kind."

For the reasons stated, it is concluded that these two actions cannot be maintained in this Court. The plaintiffs have requested in the alternative that instead of dismissing the complaints, this Court should invoke the provisions of 28 U.S.C.A. § 1406(a) and transfer these cases to the appropriate District Court in Alabama. The defendants have not opposed such request. Counsel will therefore prepare and submit within five days appropriate orders for transfer pursuant to the provisions of 28 U.S.C.A. § 1406(a).