The **PROCESS CHURCH OF the FINAL JUDGMENT**, Plaintiff,

v.

**Ed SANDERS and E. P. Dutton & Co., Inc.,** Defendants.

No. 71 C 2490.

United States District Court,
N. D. Illinois, E. D.

March 7, 1972.

Richard Orlikoff, Orlikoff, Prins, Flamm & Susman, Chicago, Ill., for plaintiff.

Lee N. Abrams, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff, a Louisiana not-for-profit corporation, has brought this libel action against Ed Sanders, a resident of New York who is author of a book entitled, "The Family—The Story of Charles Manson's Dune Buggy Attack Battalion," (hereinafter "The Family" or "the book") and Mr. Sanders' publishing house, E. P. Dutton & Co., Inc. (hereinafter "Dutton"), a New York corporation with its principal place of business in New York. Defendants Dutton and Sanders have moved to dismiss this action on the ground that this court lacks personal jurisdiction over them, or, in the alternative, they have moved to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Inasmuch as we find that we have personal jurisdiction over the defendants and that no valid reasons have been put forth for transfer, both motions of both defendants will be denied.

## I. DUTTON

### A. MOTION TO DISMISS

Pursuant to Rule 4(d) (7), Fed.R.Civ. P., plaintiff has served Dutton in accord-ance with the Illinois long arm statute. Ill.Rev.Stat. ch. 110, §§ 16 & 17. It argues that Dutton is amenable to suit in Illinois under the facts of the instant case and that, therefore, this court has jurisdiction over it. Plaintiff makes no claim that Dutton is "doing business" in the traditional sense and would therefore be "present" in the State for jurisdictional purposes; indeed, such an argument is wholly untenable.

Section 17 of chapter 110 of the Illinois Revised Statutes provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

 (a) The transaction of any business within this State;

 (b) The commission of a tortious act within this State;

\* \* \* \* \* \*

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section.

Plaintiff advances the argument that Dutton is amenable to suit under both §§ 17(1) (a) and (1) (b)—transacting business within the State and committing a tort within the State respectively.

1. *Section 17(1) (a).* The relevant facts indicate that Dutton is a New York corporation with its principal place of business in New York. It entered into an agreement to publish the allegedly libelous book "The Family" with defendant Sanders in New York. All work performed by Dutton on the book—editing, producing, promoting, and advertising—was performed in New York. Dutton placed the book on sale at major

bookstores in New York, and thereafter shipped it to various bookstores throughout the country.

Dutton maintains no office or place of business in Illinois; it has no director, officer, supervisory or professional employee in Illinois; it is not qualified to do business in Illinois; it has no registered agent or person authorized to accept service in the State; it has no telephone listing in Illinois; it has never owned or leased any real property within the State; it has never signed a contract in Illinois, nor made or received any payment here, nor maintained a bank account here. Since September 1, 1971, Dutton has had a resident salesman in Illinois who solicits orders which are not binding until they are accepted by Dutton's New York office.

■ It is mandatory in order for jurisdiction to be conferred by § 17(1) (a) that the particular cause of action arise from the transaction of the business that purports to give jurisdiction. Section 17(3) makes this point doubly explicit. This cause of action arises from the publishing of the book, "The Family." The only business that Dutton carries on generally in Illinois is the solicitation of orders for books. With respect to the book "The Family," the only business that Dutton transacted was contracting for the sale of this book with various bookstores and book purveyors. Libel, the cause of action in this suit, certainly does not arise from these contractual arrangements between Dutton and these bookstores and book purveyors.

Libel is a tort action. Section 17(1) (a) was designed to give long arm jurisdiction to the State of Illinois in contract situations; alternatively, section 17(1) (b) was designed to give long arm jurisdiction in tort situations. Since the cause of action in this case does not arise from the transaction of business by Dutton, section 17(1) (a) is inapplicable.

■ Insull v. New York World-Telegram Corp., 273 F.2d 166 (7th Cir. 1959), is directly in point and a controlling precedent on this issue. That case involved a libel suit brought by an Illinois resident against the owners and publishers of the Scripps-Howard newspapers. The Seventh Circuit held that foreign publishing corporations were not transacting business under § 17(1) (a) merely by shipping their publications into the State to subscribers or to independent contractors for resale. This holding applies equally as well to book publishers as to newspaper publishers.

Plaintiff argues that the famous and subsequent case of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), undercuts the holding of *Insull*. With respect to the issue of transacting business in the state and § 17(1) (a), *Gray* has no application. *Gray*, no doubt a landmark case, deals with the concept of a tort committed within a state, and more specifically, the timing and spacial placement of a tort for purposes of § 17 (1) (b). While *Gray* overturns the *Insull* holding with respect to § 17(1) (b), it has no persuasiveness at all with regard to the transaction of business within the state for § 17(1) (a) long arm jurisdiction purposes.

2. *Section 17(1) (b)*. Plaintiff's second ground for Illinois jurisdiction over Dutton is that by distributing "The Family" in Illinois and thereby publishing allegedly libelous material it has committed "a tortious act" within the State and is therefore amenable to suit under § 17(1) (b).

The definitive interpretation of Section 17(1) (b) came in Gray v. American Radiator & Standard Sanitary Corp., *supra*. In that case, the Illinois Supreme Court held that an Ohio manufacturer which had sold a valve to an assembler in Pennsylvania where it was incorporated in a water heater which was eventually shipped into Illinois where it exploded and injured an Illinois resident was subject to the jurisdiction of the Illinois courts absent any other contact with the state. The court stated that "[a]s a general proposition, if a corporation elects to sell

its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." 176 N.E.2d at 766. In the instant case, defendant Dutton has sold its products (books) in Illinois and has allegedly caused damage in this State. By virtue of the logic of *Gray*, Dutton is amenable to suit in Illinois under § 17(1) (b).

Dutton argues that the 1959 decision of the Seventh Circuit in Insull v. New York World-Telegram Corp., *supra*, requires dismissal of the instant action. In *Insull*, a libel action was brought in the Northern District of Illinois against the Scripps-Howard newspapers which had published an article in its papers allegedly libelling the plaintiff. Service was made on the non-resident defendants pursuant to the Illinois long arm statute. The Seventh Circuit held that such service was improper inasmuch as the court lacked jurisdiction over the non-resident defendants since they had not committed a tort in Illinois for purposes of § 17(1) (b). (As previously noted, the court also held that the defendants had not transacted business in Illinois for purposes of § 17(1) (a).) The court reasoned that by virtue of the so-called "single publication rule" as it had been developed at common law in Illinois, "the cause of action for libel is absolutely complete at the time of first publication," 273 F.2d at 171, in cases of multi-state circulation of periodicals. They continued by stating that "subsequent appearances or distributions of the periodicals are of no consequence whatsoever to the creation or existence of the cause of action but are only relevant in computing damages." 273 F.2d at 171.

Since the first actual publication of the article had been in Memphis, Tennessee, where the *Memphis Press-Scimitar* had been the first of the Scripps-Howard newspapers containing the allegedly libelous article to hit the stands, the court concluded that the tort was complete as of this publication and that as a result the tort had been committed only in

Tennessee. Accordingly, the case was dismissed.

The essential issue for this court to determine then is whether *Insull* continues to represent the law of Illinois in light of subsequent developments. The obvious irreconcilability of the *Insull* case with the later *Gray* case has been noted and discussed. Novel v. Garrison, 294 F.Supp. 825 (N.D.Ill.1969); Buckley v. New York Post Corp., 373 F.2d 175 (2d Cir. 1967); Roy v. North American Newspaper Alliance, Inc., 106 N.H. 92, 505 A.2d 844 (1964); D. Currie, "The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois," 1963 U.Ill.L.F. 533. Inasmuch as *Insull's* limitation of jurisdiction is inconsistent with the holding of *Gray* to the effect that a State's jurisdiction should attach wherever damage from defendant's products is incurred, it must give way to the later decision unless it can be supported as implementing another independent rule of law.

Dutton argues that the result of the *Insull* case is compelled by application of the Illinois single publication rule. As mentioned above, *Insull* was decided on an interpretation of the Illinois common law rule of single publication. *See,* Winrod v. Time, Inc., 334 Ill.App. 59, 78 N.E.2d 708 (1st Dist. 1948), leave to appeal denied 336 Ill.App. xiv; Winrod v. McFadden Publications, Inc., 187 F.2d 180 (7th Cir. 1951), cert. denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616.

In 1959, the Illinois Legislature passed the Uniform Single Publication Act (hereinafter the "Uniform Act"), Ill. Rev.Stat. ch. 126 § 11 et seq. The Uniform Act was passed prior to the *Insull* decision but played no part in the opinion since the complaint was filed prior to its enactment and the Uniform Act by its very terms is not retroactive. *See,* Ill.Rev.Stat. ch. 126 § 15.

The operative section of the Uniform Act provides:

No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or

any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

Nowhere does the Uniform Act speak of jurisdiction or a limitation upon the forum selection by an injured plaintiff. It merely limits a plaintiff injured by multistate publication of libel or slander to one cause of action which must include all damages suffered. The Commissioners' Prefatory Note to the Uniform Act as adopted by the Conference of Commissioners on Uniform State Laws states: "This Act is intended to make uniform the law as to causes of action for any tort arising out of a single publication, as described in Section 1 [the above quoted section]." 9C Uniform Laws Annotated 171.

 The Uniform Act clearly was not intended as a limitation upon a state's jurisdiction including its long arm jurisdiction. Indeed, the purpose behind any single publication rule is to protect both the courts and the defendant publishers from a multiplicity of suits, disparity in applicable substantive law, and a seemingly endless tolling of the statute of limitations. *See*, Prosser, Torts 788–9 (1964); 1 Harper & James, Torts § 5.16 (1956). To read a limitation upon the exercise of a state's jurisdiction into the Uniform Act, as Dutton would, is totally insupportable given the clear language of the Uniform Act and its stated purpose. Since the *Insull* decision cannot be supported by the single publication rule as it exists today in Illinois under the Uniform Act, it cannot be followed in light of the expansive reading given long arm jurisdiction by the Illinois Supreme Court in *Gray*.

It should be noted that the result reached in *Insull* would be the same under the present statute. The plaintiff in *Insull* had previously sued the *Memphis Press-Scimitar* on the same alleged libel and a verdict for the defendant had resulted. Mr. Insull then sued the *New York World-Telegram*, another Scripps-Howard newspaper, which had a small circulation in Illinois in the Federal District Court in Chicago. While the Court of Appeals found the second suit improper on the basis that only the first publication constitutes the actionable libel, under the Uniform Single Publication Act if would have been barred by virtue of its being a second action on the same libel.

It may be noted in passing that the demise of the *Insull* decision avoids the anomalies that its continuing application would have engendered. The instant case is a good example of how the blind application of *Insull* runs counter to generally accepted concepts of rational jurisprudence. *Insull* would require the dismissal of this suit. The only forum then available to the injured plaintiff would be New York; the home state of the publisher and author. Since there is but one cause of action for multistate libel, all of plaintiff's witnesses would have to travel to New York. Since libel is a damage to one's reputation and can be caused only in those jurisdictions where a reputation exists, *Insull* not only would necessitate travel and expense for an injured plaintiff but also would make proof of damages difficult, if not impossible, in a jurisdiction where the plaintiff was unknown. It makes infinitely more sense to convene a libel trial where the damage has occurred, i. e., where the witnesses of the plaintiff's reputation and the damage thereto are available. The burden for travel and litigation expense should be on the party that has caused the damage, especially in a case where the defendant is a national distributor and should foresee a possibility of litigation arising from its activities. *Insull* reverses this rationale which is one of the bases for long arm jurisdiction.

 In summary, jurisdiction over the non-resident defendants is proper in

the instant case since Dutton has allegedly committed a tort in Illinois by publishing and distributing "The Family" in the State. The Uniform Single Publication Act does not require the dismissal of this action since it does not purport to limit jurisdiction but simply limits the number of suits which may be filed for the same alleged libel.

### B. MOTION TO TRANSFER

 Defendant has moved in the alternative to have this action transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The granting of such a motion is discretionary with the trial judge. In the instant case, Dutton has failed to show that it would be more convenient for the parties and/or the witnesses or that it would further justice to have this case transferred. It has not shown with particularity which witnesses will be convenienced nor has the plaintiff shown which of its witnesses will be inconvenienced.

It is unclear at this stage of the litigation whether the interests of justice will be best served by keeping the case in this district or by transferring it to the Southern District of New York. For this reason, the motion to transfer will be denied at this time. If additional facts present themselves in the future which would militate toward transferring the case, a new motion may be made.

### II. SANDERS

Defendant Sanders, the author of the book, has joined Dutton's motions to dismiss and transfer. He has been served as a non-resident pursuant to the Illinois long arm statute. As with Dutton, his motions to dismiss and transfer will be denied. The foregoing analysis with respect to Dutton for the most part applies equally well with respect to Sanders.

It is clear that this court could not exercise jurisdiction over Sanders for the transaction of business in the state under § 17(1)(a). Plaintiff has not alleged that Sanders has transacted any business in Illinois. In addition, all business dealings relating to the book apparently took place in New York and do not relate to the instant cause of action. As with Dutton, Sanders is amenable to suit in Illinois under § 17(1)(b) for the commission of a tort in the state—the publication of allegedly libelous material. Accordingly, his motion to dismiss must be denied.

Sanders has failed to show any reasons why the action should be transferred to the Southern District of New York. The reasons put forth by Dutton do not necessarily apply with equal force to Sanders, but to whatever extent they do apply, he fares no better than Dutton. His motion to transfer the case will be denied at this time.

An appropriate order will enter denying both defense motions.