**BILLY BAXTER, INC., Plaintiff,**

**v.**

**The COCA–COLA COMPANY and Canada Dry Corp., Defendants.**

**No. 66 Civ. 1454.**

United States District Court
S. D. New York.

May 28, 1969.

Greenburg & Adler, New York City, for plaintiff (Henry A. Greenburg and William F. Adler, New York City, of counsel).

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant The Coca-Cola Co. (Jay H. Topkis, Jay Greenfield and Bernard Ouziel, New York City, of counsel).

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Canada Dry Corp. (Edward N. Sherry, Kenneth Laurence and Robert A. Meîster, New York City, of counsel).

### OPINION

RYAN, District Judge.

Defendants move for summary judgment dismissing the complaint with prejudice, urging that the pleadings and plaintiff's responses to the defendants' interrogatories establish that plaintiff may not maintain this action under Section 4 of the Clayton Act (Title 15 U.S.C.

Section 15) because plaintiff (1) lacks standing to sue for the injuries alleged, and (2) has not been damaged in its business or property within the meaning of the antitrust laws. Defendants urge that undisputed facts established by plaintiff's own allegations and sworn statements require the granting of the relief sought.

This motion of defendants for summary judgment was filed on July 19, 1968. It was followed by service of a motion of the plaintiff for leave to serve an amended complaint. It has been stipulated that, if such leave is granted, defendants' motion shall be deemed to be addressed to the complaint so amended; if such leave be denied, the motion shall be considered addressed to the complaint as originally filed. In either event, we must pass upon plaintiff's motion before we reach the defendants' motion for summary judgment.

Plaintiff's attorneys describe the amendments in the proposed complaint as "being sought to make more sufficient and definite the statement of the causes of action of plaintiff." Specifically, plaintiff states that it seeks to include allegations in (a) Paragraph 11, concerning its plans for national marketing of its products; and in (b) Paragraph 18, concerning the scope of plaintiff's sales; and in (c) Paragraphs 25 to 37, concerning defendants' illegal acts with respect to plaintiff and plaintiff's injuries therefrom.

Although Rule 15(a), F.R.Civ. P., requires that leave to amend a pleading shall be freely given, the amendment must be sought in good faith and must be granted when justice requires. A finding of good faith must have at least prima facie showing of a possibility of the amender's ability to establish factual support for the new matters sought to be pleaded. There must also be a showing that the amendment is not sought as a dilatory measure and that the defendant will not be prejudiced.

Before we examine the proposed amendments, we must consider another of the avalanche of motions which have descended upon us in this action. This brings us to plaintiff's motion for leave to amend or supplement its answers, sworn to on December 15, 1966, by its President William F. Adler, to Interrogatories Nos. 9, 10, 24 and 46, propounded by defendant CANADA DRY CORP. Adler is and has been the general manager and counsel of the corporation. He is also a member of the New York Bar and a partner in the law firm of Greenburg & Adler, the attorneys for plaintiff in this action. One of his affidavits submitted states that for a period of several years, he served as a Referee in Bankruptcy in Ohio. It appears that he has had a varied experience in the practice of the law and in business affairs.

The amendments proposed to be made in these answers, plaintiff says in this notice of motion served on October 17, 1968, "are necessitated by failure of the original answers, through inadvertence, to include all the matters necessary for complete responses and to remove opinion language from said interrogatory answers * * * ". However, in plaintiff's memorandum, plaintiff states that this information "should be included in Plaintiff's answers, especially in light of Defendant's motion for summary judgment in this action." Plaintiff seeks to plead new matter to defeat defendants' motion for summary judgment.

We must consider these motions in light of the history of the action. The docket and file show the following:

May 19, 1966—Complaint filed.

October 11, 1966—answers of defendants served.

July 19, 1968—defendants move for dismissal.

September 13, 1968—plaintiff moves for leave to amend its complaint.

October 17, 1968—plaintiff moves for leave to amend its answers to CANADA DRY's interrogatories.

It is not disputed that the genesis of plaintiff's last two motions was Judge Mansfield's decision on plaintiff's prior motion.

On February 23, 1968 plaintiff served interrogatories upon defendant CANADA DRY and on May 31, 1968 it served amendments to these interrogatories. CANADA DRY served objections to nine of these interrogatories: Nos. 7, 8, 16, 23, 30, 31, 32, 33 and 34, and brought these objections on for motion hearing and ruling on July 25, 1968. The matter was heard and referred by Judge Mansfield to Pretrial Examiner Potter as Special Master, to hear and report. A report was filed on September 10, 1968 and Judge Mansfield, acting on that report, sustained the objections to the nine interrogatories. The report, approved by Judge Mansfield, stated in part that:

"Defendant Canada Dry's objections to interrogatories 7, 8, 16, 23, 30, 31, 32, 33 and 34 are limited to the claim that under the complaint and plaintiff's answers to interrogatories, the matters covered by these interrogatories are clearly irrelevant. This argument proceeds on a theory that in the complaint plaintiff alleges that it is a franchisor of beverages and that defendants' actions tended to substantially reduce plaintiff's sales. Further, in its answers to interrogatories plaintiff admits that only on limited occasions did it directly sell non-alcoholic carbonated beverages to customers. Based "on these statements Canada Dry claims that since plaintiff is a franchisor, its business is restricted to the issuing of franchises to sell a named brand beverage and that accordingly sales of the bottled goods by Canada Dry are irrelevant.

"At the hearing counsel for plaintiff argued that the activity of defendants had precluded plaintiff from entering into the field and that accordingly the interrogatories are proper.

"I would recommend that the motion be granted in all respects since under the complaint in its present form it would appear that the matters inquired into by these interrogatories are irrelevant. Obviously, if plaintiff amends its complaint to include an allegation similar to the one raised by its counsel, the interrogatories would appear proper."

It is obvious that the observation that an appropriate amendment to the complaint would make the stricken interrogatories proper, prompted the motion to serve an amended complaint. Later, proceedings by the defendants on the motion for summary judgment brought on plaintiff's application to amend its answers to CANADA DRY's interrogatories.

It seems best that we first examine the amendments sought to be pleaded in the proposed amended complaint.*

These amendments to the complaint concern the nature of plaintiff's business and alleged damage, which plaintiff has claimed to be "lost profits estimated at $500,000 during the period since January 1, 1963." Defendants contend they are conclusory allegations sought to be pleaded without any statement of evidence to support them and contradict allegations in the original complaint and in plaintiff's sworn interrogatory answers. There is ample to support defendants' contentions and to lead to a conclusion that the plaintiff's motions are made in an attempt to avoid the consequence

---

\* This motion to amend the complaint comes 27 months after this action was filed, almost 2 months after defendants' motion for summary judgment and several weeks after plaintiff served its papers in opposition to defendants' motion for summary judgment. The motion also comes after almost two years of pretrial discovery which included interrogatories and cross-interrogatories by all the parties, as well as depositions taken of plaintiff and of both defendants. No showing is made by the plaintiff that the amendments plead new matter in the nature of newly discovered evidence.

of defendants' motion for summary judgment.

## THE PROPOSED AMENDED COMPLAINT.

The original complaint alleges a single count for alleged violation of the Sherman Act (Title 15 U.S.C. Sections 1 through 7, 15); the Clayton Act (Title 15 U.S.C. Sections 12 through 27); and the Robinson-Patman Act (Title 15 U.S.C. Sections 13, 15).

The amended complaint pleads four counts (labeled as claims, which term we shall use for clarity) against one or both defendants; and alleges that "Claim First" is brought under the Clayton Act (Title 15 U.S.C. Sections 12, 22, 26), the Sherman Act (Title 15 U.S.C. Sections 1, 2) and the Robinson-Patman Act (Title 15 U.S.C. Section 13) against both defendants; that "Claim Second" is brought against the COCA COLA COMPANY in tort to recover damages for inducement of breach of contract; that "Claim Third" is brought "for slander of property or malicious interference with business relations and similar acts of unfair competition" against one or both defendants; and that "Claim Fourth" is brought in tort "in order to recover damages from one or both defendants for 'Prima Facie' tort." But in the amended complaint, the following added allegations are set forth that "Claims Second through Fourth are incidental to Claim First" and that in these claims there is diversity jurisdiction.

The original complaint alleges that plaintiff is a franchiser of beverages sold under the "Billy Baxter" trademark and that it distributes flavor extracts to its franchise bottlers who mix these extracts with carbonated water and bottle a finished product. It also alleges that COCA COLA dominates the industry in the United States as a franchiser and bottler; that CANADA DRY occupies a similar, though lesser position as a franchiser and bottler of mixes and that, by agreement, both avoid genuine competition against each other's "primary product lines"; and that these defendants have acted in concert to exclude plaintiff "from the normal channels of interstate commerce."

The allegations of the original complaint, when read with plaintiff's answers to defendants' interrogatories, attempt to state first a claim for recovery of damages alleged to have been sustained by plaintiff in respect to "lost profits" by plaintiff's licensed bottlers on sales of carbonated beverages to six named users; second, a claim for damages sustained by reason of interference by CANADA DRY with a marketing program in Pittsburgh, involving "Sealtest Foods"; third, a claim that defendants' acts made it "unable to operate" and forced it to try to sell its business and a claim for injury resulting from alleged obstruction by COCA COLA of an attempted sale to a third party.

As to the first two specifications of alleged damages, defendants contend, and we hold properly so, that plaintiff is without standing to sue; as to the third specification, that, since the alleged attempt affects the business and stock of the plaintiff, the claim, if there be any, is vested in the stockholders of plaintiff and not plaintiff.

We find the crux of the amended complaint set forth in paragraphs 10 and 11 so as to restate the nature and extent of plaintiff's business and expand it beyond the former pleading and statements of plaintiff in response to defendants' interrogatories.

Plaintiff, in response to interrogatories propounded by defendant CANADA DRY, further stated that:

"The Company has no plants or  *  * facilities [other than its administrative offices in New York and Pittsburgh]. A description of the business carried on at the company's offices is the purchase of beverage extracts and the sale of same to franchised bottlers, with related advertising and promo-

tional activities. On a few occasions, the company has purchased bottled beverages from one or more of its franchised bottlers for resale." (Response to CANADA DRY's Interrogatory 9.)

and it added in response to Interrogatory 10 that:

"The company neither manufactured, bottled, distributed nor sold products, except as described in response 9 above. The products [are] manufactured, bottled, distributed and sold by the company's franchised bottlers * * *".

The form of plaintiff's franchise or license agreement is attached to its answers to COCA COLA's interrogatories. It is sufficient here to note only (a) that the bottlers were obligated to purchase flavor ingredients from plaintiff; (b) to pay royalties to plaintiff based upon the number of cases of beverages sold by the bottlers; and (c) that the licensed bottlers were granted the exclusive right to use the "Billy Baxter" mark on their bottled beverages in a specified area. The license also provided that the licensed bottlers were to be independent operators and with no power to act for, represent or bind "Billy Baxter". At no time was plaintiff any part of the manufacturing or marketing operations of its licensees.

We find that plaintiff has in its answers to interrogatories judicially admitted in this action that the injury plaintiff alleges arose from its business operations only as a franchiser.

Paragraph 11(b) of the proposed amended complaint alleges, in part:

"The nature and extent of such interstate commerce engaged in by Plaintiff during the times complained of herein was:

* * * * * *

(b) sales to retailers in the state of Pennsylvania, New Jersey, New York and Ohio, and West Virginia of both flavored carbonated beverages and mixers purchased by Plaintiff from bottlers franchised by it."

As bearing upon the merits of the additional matters sought to be pleaded, the following facts disclosed by research of defendants' attorneys are to be considered:

1. Plaintiff filed the Articles of Incorporation with the Corporation Bureau of the Department of State of Pennsylvania on December 7, 1962. The purpose of the corporation is thus stated:

"3. The purpose or purposes of the corporation are to sell, lease, transfer, assign or grant franchises to bottlers of the authority to produce and bottle beverages of all kinds under the formulas and trade mark of Billy Baxter."

2. The purposes and powers of the plaintiff are still the same and have not been enlarged or broadened.

3. Under Article XVI, Section 6, of the Pennsylvania Constitution, plaintiff may not engage "in the business of manufacturing, processing, distributing or selling carbonated beverages."

4. Under Section 1301(a) of the Business Corporation Law of New York, plaintiff, although licensed to do business in New York, may not exercise any greater powers than it can in Pennsylvania and therefore may not distribute or sell carbonated beverages in New York.

5. Plaintiff has never qualified to do business in New Jersey, Ohio or West Virginia.

In sum, then, it is of record that plaintiff cannot lawfully transact business of the nature alleged in Paragraph 11(b) of the proposed amended complaint.

Analysis of the purported retail sales claimed to have been made by plaintiff establishes that they were not in truth sales.

Defendants' motions for summary judgment awoke the plaintiff's lawyer

**350**

president to realization of the fact that, as a franchiser, plaintiff did not bring itself within the scope of Section 4 as one who could claim anti-trust damages. As a franchiser, plaintiff was outside of the target area for it did not produce, sell, purchase or lease the entire affected competing product in an independent capacity. It has long been held that, as a franchiser, it would be non-suited (Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir., 1955)). To overcome this, plaintiff would plead that it was a manufacturer and retailer and would likewise withdraw its judicial admissions that it operated only as a franchiser. The only trouble with this attempt of plaintiff is that the matters it would now plead in the amendments are both contrary to fact and without factual basis.

 I am not unmindful that "summary procedures should be used sparingly in complex antitrust litigation" and that "[t]rial by affidavit is no substitute for trial by jury" (Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); quoted in Fortner Enterprises v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed. 495, decided April 7, 1969). That is so where motive and intent play leading roles. Standing to sue and absence of injury are not difficult to ascertain (First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed. 2d 569). Here, it is patent that the amendments are contrary to facts admitted by plaintiff and which require no further exploration. Claims 2 through 4 described by plaintiff as incidental to Claim 1 also must fall. They are claimed to be a result of the antitrust activities of defendants and to be part of those activities. In addition, it is clear that no proposed sale was in existence which could have been interfered with and that, if the sale was to be of the company stock, the claim would belong to the stockholders. In any event, it is clear

that the claims here asserted are part of the antitrust claim and that they are conjectural in that plaintiff is unable to define what its damages were. I have concluded that summary judgment of dismissal on the merits should be granted to defendants with costs, and the Clerk is directed forthwith to enter judgment accordingly.