## TROUNSTINE v. BAUER, POGUE & CO., Inc., et al.

District Court, S. D. New York.

March 31, 1942.

Joseph Rilander, of New York City (Edgar J. Bernheimer, Sidney Rosenbaum, and Sidney J. Schwartz, all of New York City, of counsel), for plaintiff.

Benjamin P. DeWitt, of New York City, (Benjamin P. DeWitt and Sidney Pepper, both of New York City, of counsel), for defendant Bauer, Pogue & Co., Inc.

Sidney Pepper, of New York City (Benjamin P. DeWitt and Sidney Pepper, both of New York City, of counsel), for defendant Frederick R. Bauer.

BRIGHT, District Judge.

Plaintiff brings this suit for an accounting of certain transactions of the defendants in the stock of Fidelio Brewery, Inc., which, it is alleged, was to be dealt in for the joint benefit of Norman S. Goldberger, her testator, and the defendants. The amended complaint sets out two causes of action, the first upon an alleged oral agreement claimed to have been entered into on or shortly prior to June 8, 1933, between the defendant corporation acting through the individual defendants Bauer and Pogue, the latter since deceased, and the second upon an alleged written agreement dated June 9, 1933, both agreements being in substantially the same terms. The defendant Donald F. Arrowsmith, as executor, etc., of Davenport Pogue, deceased, has not been served, nor has he appeared herein.

The determination of the questions involved is simplified, to a large extent, by admissions in the pleadings and upon the trial. From them, it appears that the defendant corporation, organized in Delaware, was dissolved in December, 1937, but under the laws of that state it "continues in existence for the purpose of liquidating its assets, discharging its liabilities, and prosecuting or defending suits by or against it". Prior to April, 1933, Bauer and Pogue were copartners under the name of Bauer, Pogue & Company, dealing in securities, and so continued until the death of Pogue. Bauer is the sole surviving partner. The corporation was organized in April, 1933, by Bauer and Pogue, to conduct the business of said partnership, including the sale and disposition of the Brewery stock, was authorized to do business in the State of New York, and all of its capital stock was owned by Bauer and Pogue, who were in control of it, and exercised direction and management of its business and affairs. On or about June 6, 1933, the defendant corporation, under the direction of Bauer and Pogue, completed the sale of 334,000 shares of Fidelio Brewery, of which corporation Goldberger was president and the owner of a majority of its stock. On or about June 13, 1933, the defendant corporation received from Goldberger 50,000 shares of Fidelio stock, which were registered, at the request of Bauer and Pogue, in the name of the copartnership. The corporation and Bauer and Pogue in June and July, 1933, conducted a joint account in the Fidelio stock, in which Goldberger had an interest, which transaction terminated about the last week of July, 1933. During those two months, the corporation made sales of quantities of Fidelio stock "for its sole benefit", none of which were credited or accounted for to Goldberger; and sales of the same stock were made for accounts in the names of Duffy, Valenti and Williams, employees of the corporation, which stock was owned by Bauer and Pogue, and which were not credited or accounted for to Goldberger. The account Exhibit A attached to the amended complaint was delivered to Goldberger, was incorrect, and did not accurately set forth transactions in the Fidelio joint account, and that was the only statement made to Goldberger of transactions in Fidelio stock in which he was interested. The answering defendants also admit that there was paid to Goldberger $71,847.58, being the amount shown to be due him by Exhibit A, and no more. Part of the assets of the corporation have been distributed to Bauer and Pogue, and its remaining assets still remain undistributed. The corporation is ready to account for its transactions in Fidelio stock in which Goldberger was interested. They further admit that a writing, in the form set out in Exhibit B to the amended complaint, was signed by Bauer on behalf of the corporation and delivered to Goldberger, and that Goldberger signed the writing and returned it to the corporation.

The first question to be determined is that raised by the defendant corporation—that more than three years have elapsed since it was dissolved, and, therefore, no judgment may be taken against it because under the laws of Delaware it has ceased to exist for any such purpose. Attention is called to Section 42 of the General Corporation Law of that state, Rev.Code Del.1935, § 2074, which provides, so far as material: "All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such * * * dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them * * *; provided, however, that with respect to any action * * *

begun or commenced by or against the corporation prior to such * * * dissolution and with respect to any action * * * begun or commenced by the corporation within three years after the date of such * * * dissolution, such corporation shall only for the purpose of such actions * * * be continued bodies corporate beyond said three-year period and until any judgment * * * therein shall be fully executed."

The defendant corporation contends that this suit, not having been begun before the dissolution, the extension of three years cannot apply to it, and only applies to actions begun by the corporation and not against it.

The action was originally commenced in the New York Supreme Court and was removed to this court on September 27, 1939, upon a petition by the corporation defendant, which alleged that it was and is a nonresident of the State of New York, "and at the time of the commencement of this suit, ever since has been, and still is, a corporation organized under the laws of the State of Delaware and a citizen of said State of Delaware".

As above stated, it is admitted that it was authorized to do business in the State of New York, that it continues in business for the purpose of liquidating its assets, discharging its liabilities and defending suits against it, and that its assets have not yet been entirely distributed. As we have seen, it is also admitted that it is ready to account and that an accounting should be had and in its answer asks permission so to do. Upon the trial, its counsel conceded that the defendants were willing to account but contended that the accounting should be from June 13, 1933. When asked what the questions to be decided were, counsel stated that they were three in number—(1) whether there should be an accounting from June 8 or June 13, 1933; (2) whether such accounting should include the sales made by the defendant in its trading account and those made by its employees; and (3) whether it should also include a sale claimed to have been made by Goldberger to Sidney Rosenbaum.

■ Under Section 210 of the General Corporation Law of New York, Consol. Laws N.Y. c. 23, the corporation could not do business in this state without first obtaining a certificate of authority from the Secretary of State and his designation as its agent upon whom process might be served within the state. Under Section 216 of the same law, it could not surrender that authority without consenting that process against it, in an action upon any liability or obligation, incurred within this state before the filing of any certificate of surrender, after the filing thereof, might be served upon the Secretary; and even the filing of such a certificate would not affect any right of action upon any contract made before the surrender. The designation of the Secretary of State upon whom process might be served in this state was a consent to be sued here, and a waiver of any claim of want of jurisdiction over the person of the corporation. Neirbo Co. v. Bethlehem Corp., 308 U.S. 165–175, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437. The granting of a certificate to do business constituted a true contract with the state, and the Secretary of State was a true agent of the corporation. The actions in which he was to represent the corporation were not limited. Bagdon v. Philadelphia & Reading C. & I. Co., 217 N.Y. 432, 111 N.E. 1075, L.R.A. 1916F, 407, Ann.Cas.1918A, 389.

■ It is probably true that Bauer, Pogue & Company, Inc., is dead in Delaware, except insofar as its corporate existence is continued by the laws of that state. Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L. Ed. 634. But having contracted with the State of New York when it acquired the right to do business here, it is still existent in this state insofar as the winding up of its business and the administration of its assets here may be carried on in this jurisdiction, where it did its business and where the controversy now in suit arose. Matter of National Surety Co., 283 N.Y. 68–77, 27 N.E.2d 505; Restatement of Law, Conflict of Law, Section 158-(a), page 230. Although the existence and powers of a foreign corporation coming into this state to do business are at all times subject to the law of its creation and domicile, it is also subject to laws relating to it and the terms laid down by the legislature of this state as conditions of its doing business here. Sinnott v. Hanan, 214 N.Y. 454–458, 108 N.E. 858. When a foreign corporation comes into New York State and transacts its business there, it must yield obedience to its laws. That is a condition on which the right to do business there depends. German-American Coffee Co. v. Diehl, 216 N.Y. 57–64, 109 N.E. 875; Horn Silver Mining Co. v. New York, 143 U.S.

305, 314, 315, 12 S.Ct. 403, 36 L.Ed. 164. That which a state may do with corporations of its own creation it may do with foreign corporations admitted into the state. Orient Insurance Co. v. Daggs, 172 U.S. 557-566, 19 S.Ct. 281, 43 L.Ed. 552.

The Oklahoma Gas Company case is cited by the defendant corporation to show its demise before the commencement of this action. But it is to be noted that in that case the Supreme Court refused to substitute a new party in place of the allegedly dead one; it seemed that there was no abatement because, for litigating purposes, the Oklahoma Company was still in being and a party before the court. Significantly, in language appropriate to the present case, it was stated [273 U.S. 257, 47 S.Ct. 393, 71 L.Ed. 634], "The motion is signed by counsel for the appellant, the Oklahoma Natural Gas Company. He does not explain how he continues to represent the appellant, if in fact it has ceased to be as he represents to this court". It would seem to be the law that an action abates upon dissolution of the corporation only "when there is no statute or public policy to the contrary in the state where the foreign corporation has been licensed to do business". Clark v. Williard, 292 U.S. 112, 119, 54 S.Ct. 615, 618, 78 L.Ed. 1160.

Somewhat similar language is used in James & Co. v. Second Russian Insurance Co., 239 N.Y. 248, 254, 146 N.E. 369, 370, 37 A.L.R. 720, where plaintiff, an assignor of a British insurance company, sued to recover for marine losses against which the defendant had insured. The defendant defended that its corporate life was ended by a decree of the Russian Soviet Government nationalizing the business of insurance companies, and releasing them from the payment of debts and liabilities. It was still engaged in business, however. A motion to compel a reply to that defense was denied and the order was affirmed, the court saying: "We deal first with the so-called defense that the corporation which defends is dead and so incapable of defending. * * * A corporation with vitality sufficient to answer a complaint has, by the very terms of the hypothesis, vitality sufficient to permit it to be sued. The shades of dead defendants do not appear and plead. Expedients, of course, there are whereby a court may be informed that jurisdiction has been halted. * * * But if we put the questions to one side and view the statements of the answer * * * as a suggestion of its death, to be heeded even in this court, lest a controversy with an unreal litigant be unwittingly determined, the result will not be changed. The decree of the Russian Soviet government nationalizing its insurance companies has no effect in the United States unless, it may be, to such extent as justice and public policy require that effect be given. * * * Justice and public policy do not require that the defendant now before us shall be pronounced immune from suit. * * * If existence be assumed, the question remains whether liability has been extinguished. Was it extinguished by the Soviet decree canceling or releasing the debts of the nationalized companies? * * * Its fiat to that effect could not constrain the courts of other sovereignties, if assets of the debtor were available for seizure in the jurisdiction of the forum."

It might also be said that at no time until the final submission of briefs after the trial of the case, was this point raised by the defendant corporation. There is no such defense set up in the answer, nor any suggestion of complete and final demise made on the record. It was not specifically raised prior to or during the trial by any motion to dismiss or in any other manner. On the contrary, the defendants conceded that there should be an accounting by the corporation and its answer expressly asks that one be had. I can see no merit in the contention either as a matter of law or fairness or equity.

Should there be an accounting? It is admitted there should. It is also admitted that there was a joint account in the Brewery stock, and that the statement rendered to Goldberger after the account was closed is incorrect. The questions remaining, therefore, are (1) what were the terms of the agreement as to the joint account; (2) between what dates should such accounting be had; (3) should it include the trading account of the defendants, the nominee accounts of Duffy, Valenti and Williams, and the sale to Rosenbaum; and (4) should the defendant Bauer be held liable.

The weight of the evidence shows that the original transactions in the sale of 334,000 shares of the Fidelio stock were concluded about June 6, 1933 or shortly thereafter. Goldberger and the defendants had other stock which they concluded could be profitably marketed. On or about June 8, 1933, they entered into an agreement or joint venture for the purpose of dealing in that stock. This was confirmed by the

letter of June 9, 1933, signed by the corporate defendant and Goldberger, and which substantially sets out the terms of that agreement. That such an agreement was made, substantially on the terms of that letter, is corroborated by the written instrument itself, Exhibit B attached to the complaint; by the letter from Bauer, Pogue & Company to Goldberger dated June 9, 1933, consenting to the release of Goldberger's stock escrowed to them in April 1933; by the letter from Goldberger to the Guaranty Trust Company of June 9, 1933, approved by the partnership and corporation on that day, authorizing the delivery of 50,000 shares of the Fidelio stock to the partnership, that being his contribution to the account; by the record of the Guaranty Trust Company dated June 9, 1933, showing the splitting up of Goldberger's larger certificate of stock so that 50,000 shares could be recorded in the name of and delivered to the partnership; by the ledger of the defendant corporation showing this joint trading account which begins on June 8, 1933 and ends on August 2, 1933; by the accounting which was made by the corporation to Goldberger on September 11, 1933, Exhibit A attached to the complaint, which contains the summaries of net profit to the joint adventurers in the same figures as are contained in the ledger account; and by the letter from Tribble dated July 11, 1933 addressed to the defendant corporation in which reference is made "to the account formed by you and Norman S. Goldberger dated June 9, 1933, for trading in the common stock of Fidelio".

It is, of course, obvious that the letter of June 9, 1933 was addressed to George E. Tribble, as well as to Goldberger, and the defendants claim that that could not constitute any contract because it was not accepted by Tribble. But that does not detract from the fact that there was an agreement between the corporation and Goldberger, as outlined in the letter of June 9, 1933. Defendants began their entries of items in that account the day before and paid a substantial sum of money both to Goldberger and to Tribble, based upon such beginning. And Tribble did come in upon practically every term contained in the letter of June 9.

Under the agreement the trading account was to begin forthwith. It did on June 8, 1933 and ended on August 2, 1933. The account and accounting so shows. Gold-

berger and the corporation agreed to contribute each 50,000 shares at $3, and they did. Tribble agreed to contribute 15,000 shares, and he did. Goldberger agreed to deliver to the corporation his number of shares forthwith, and the evidence shows he did. All purchases and sales of said stock made by the corporation during said period, including any purchases made pursuant to options, "shall be deemed for said account". The defendant corporation was to receive for its services in operating said account, 20% of the net profits upon the final termination, and the accounting shows that it made such deduction both from Goldberger and Tribble. The corporation agreed to distribute the shares remaining and the profits pro rata among the three adventurers, and it did. It was also agreed that during the period of the account's operation, neither Goldberger nor Tribble should directly or indirectly sell or dispose of any shares in the open market except for said account and under the direction of the corporation.

The agreement and trading account were obviously a joint adventure. Each participant in it bore a fiduciary relationship to the other. In re Taub, 2 Cir., 4 F.2d 993, 994; Chapman v. Dwyer, 2 Cir., 40 F.2d 468-470; Hey v. Duncan, 7 Cir., 13 F.2d 794, 795; Kimberly v. Arms, 129 U.S. 512, 527, 9 S.Ct. 355, 32 L.Ed. 764; Dexter & Carpenter v. Houston, 4 Cir., 20 F.2d 647-651; Cray, McFawn & Co. v. Hegarty, D.C., 27 F.Supp. 93-99, affirmed 2 Cir., 109 F.2d 443; Meinhard v. Salmon, 249 N.Y. 458-463, 164 N.E. 545, 62 A.L.R. 1; Selwyn & Co. v. Waller, 212 N.Y. 507-511, 106 N.E. 321, L.R.A. 1915B, 160. None could deal secretly in the stock during the period of the account for his or its individual profit. Bauer and Pogue, holders of all of the capital stock of the corporation who would thereby receive an equal share in the proceeds of the venture and who admittedly controlled the corporation and invited Goldberger to repose trust and confidence in them as officers and directors of the corporation, were likewise in a similar relationship with Goldberger. It is admitted that the 50,000 shares contributed by Goldberger to the account were, at the request of the individual defendants, registered in the name, not of the corporation but of the partnership of Bauer, Pogue & Company, in which the individual defendants were partners. Bauer admits that the corporation made sales of quanti-

ties of Fidelio stock during the period in question, for the sole benefit of the corporation and that none of the profits of those sales were credited to or accounted for to Goldberger. He also admits that during the same period, sales of Fidelio stock, owned by the individual defendants, were made for accounts in the names of three employees of the defendant corporation, and the profits from the sales were retained by the individual defendants and not accounted for to Goldberger.

It is clear that there was an obvious breach of the fiduciary relationship existing, participated in not only by the corporation but also by the individuals Bauer and Pogue and in violation of the terms of the agreement, from which breach all of them secretly profited.

There should, therefore, be an accounting of all of the transactions in Fidelio stock between June 8, 1933, and August 2, 1933, including the trading account of the corporation, as well as the sales made under the names of the three employees of stock owned by Bauer and Pogue.

 It appears that on July 21, 1933, Goldberger requested the Guaranty Trust Company to transfer to Sidney Rosenbaum 25,000 shares of the Fidelio stock and that Rosenbaum received the same on July 24, 1933. Under the agreement, all sales during the period of the duration of the account were to be deemed for the account and Goldberger did not have the right to sell or dispose of any shares of Fidelio stock in the open market except for the trading account and under the direction of the corporation. This transaction, therefore, must be inquired into upon the accounting to be had, and if found to have been in violation of the agreement, and profit was derived therefrom, shall be included in the profits to be accounted for and distributed.

If it appears upon said accounting that the profits in the said joint trading account are increased, the special master will determine whether or not the corporation is entitled to a 20% commission upon such increase. Insofar as any such profit may have resulted from the dealings of the corporation in its own trading account, or from the sales in the names of the three employees, which would be in violation of the agreement, there should not be allowed to the corporation any such commission upon those sales or deals.

The final question is whether or not the defendant Bauer shall be held personally liable. He admits that he was a director and the owner of 50% of the stock of the defendant corporation. He admits that he received his share of the profits from the sales in the names of the employees of stock owned in part personally by him and during the time when he and his partner were engaged in their direction and management of the corporation in the sale of stock owned under the joint trading account. He also admits that he and his partner impliedly invited Goldberger to repose confidence and trust in them as officers and directors of the corporation. In the distribution of the assets of the corporation, in which he undoubtedly shared, he has personally profited from the violation of the joint trading account agreement and was a party to such violation. He should, accordingly, be held jointly liable with the corporation. Muller v. Ackerman, 250 App.Div. 129–132, 293 N.Y.S. 547; Wainwright & Page v. Burr & McAuley, 272 N.Y. 130–133, 5 N.E.2d 64.

The entry of an interlocutory judgment is, therefore, directed, requiring the answering defendants to account in accordance with the foregoing, and appointing a special master for that purpose.