Harvey B. JOHNSON

v.

HELICOPTER & AIRPLANE SERVICES CORPORATION et al.

Civ. No. 72–832–Y.

United States District Court, D. Maryland.

Dec. 20, 1974.

Lawrence F. Rodowsky, Baltimore, Md., Alan S. Hoffman, and John P. McKenna, Washington, D.C., for plaintiff.

John T. Ward and Robert R. Winter, Baltimore, Md., for defendant Societe Nationale Industrialle Aerospatiale of France.

Francis J. Ford, Rockville, Md., for defendant Societe Turbomeca of France.

Joseph S. McCarthy and Charles E. Wilson, Jr., Rockville, Md., for defendant Fairchild Industries, Inc.

John S. Yodice, Bethesda, Md., for defendants Helicopter & Airplane Service Corporation and Richard H. Sanders and Robert Sanders.

Edmund P. Dandridge, Jr. and Robert G. Smith, Baltimore, Md., for defendant Republic Aviation Corporation.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The complaint in this personal injury action was filed more than two years ago against seven defendants. In his complaint, plaintiff alleges that on December 31, 1970, while he was piloting an Alouette II S.E. 3130 helicopter in Virginia, the engine ceased functioning properly, causing the aircraft to crash, injuring him. He also alleges that in the course of the crash, the seatbelt attachment failed to function properly, further aggravating the injury.

Three pre-trial motions are before the Court: the first is the plaintiff's motion to amend his complaint; the second is a summary judgment motion by defendant Helicopter and Airplane Services Corporation; and the third is a set of motions by defendant Republic Aviation Corporation arguing for dismissal on the grounds of lack of personal jurisdiction and venue, and lack of capacity, to which the plaintiff has responded with a motion to transfer under 28 U.S.C. § 1406(a). The facts relevant to each motion will be set forth below.

## PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

Plaintiff has moved under Federal Rule of Civil Procedure 15 to amend his complaint to add Robert and Richard Sanders to Count III, the strict liability count, and to add a new Count V (which since Count IV has been previously dismissed would now be new Count IV), which in substance seeks to "pierce the corporate veil" of the Helicopter and Airplane Services Corporation (HASCO) in order to reach Robert Sanders, a HASCO stockholder. The proposed count asserts that HASCO has conducted its business with assets insufficient to satisfy claims of persons damaged by HASCO's acts and omissions, and that the stockholders of HASCO, specially Sanders, have directed HASCO's affairs in a manner in which HASCO's capital has been diverted to areas other than capital contributions, rendering HASCO insolvent. For these abuses of the corporate entity, plaintiff claims that the stockholders are personally liable to the plaintiff for damages.

Sanders does not oppose the amendment of Count III, but claims that he would be prejudiced by the addition of Count V to the complaint. Sanders states that prejudice would result because under the relevant caselaw, plaintiff is required to exhaust its legal remedies against HASCO before proceeding against the corporation's stockholders and because HASCO's liability will in any case be paid by its insurer. He asserts that forcing him to litigate such a claim would put him to unnecessary expense.

The function of Rule 15 is to provide parties an opportunity to assert new matters that may not have been known to them at the time they filed their original pleadings. 6 C. Wright and A. Miller, Fed. Prac. and Proc., Civil ¶ 1473, at 376 (1971).

The courts have taken a very liberal attitude toward motions to amend. This does not mean, however, that leave to amend must be granted in all cases. Generally the courts must follow the standard set by the rule: pleadings may be amended "when justice so requires." This standard implies its negative; when injustice such as undue

prejudice would occur, amendments may not be made.

■■ Prejudice will not occur here. Sander's objections to the motion go primarily to the merits of the claim raised by the new count. Nevertheless, the merits of the claim are irrelevant in determining whether a motion to amend should be granted, Key Pharmaceuticals, Inc. v. Lowey, 54 F.R.D. 447, 449 n.5 and cases cited therein (S.D.N.Y.1972). Other methods are available to the defendant to attack the substance of the claim. As long as the amendment is not a frivolous or dilatory measure, and is made in good faith, it should be granted. Billy Baxter, Inc. v. Coca-Cola Co., 47 F.R.D. 345, 346 (S.D.N.Y.1969), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L. Ed.2d 826 (1971).

In addition, the interest of judicial economy is served, since Sanders is already a defendant under Counts I and III of the complaint; plaintiff should be able to litigate his action against Sanders on all theories available to him at one time.

■ The motion to amend the complaint under Rule 15 is therefore granted.

## HASCO'S MOTION FOR SUMMARY JUDGMENT

Defendant HASCO, which maintained the helicopter and employed Johnson on the day of the crash, has moved for summary judgment pursuant to Fed.R. Civ.P. 56, contending that the plaintiff's exclusive remedy is under the Maryland Workmen's Compensation Act, Md.Ann. Code art. 101, §§ 1–102, (1974 Cum. Supp.). In response, plaintiff insists that summary judgment should not be granted on the grounds that material facts and the inferences which may be drawn from them are in dispute, and because HASCO is not entitled to judgment at law because at the time of the accident, the plaintiff did not come within the ambit of the Workmen's Compensation Act because he was an independent contractor or a "casual" employee.

■ The rule in this Circuit for the grant of summary judgment requires that there be no dispute as to the material facts, and that the moving party must be entitled to judgment as a matter of law. As noted by the plaintiff, that standard has been elucidated by the Fourth Circuit as follows:

It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. Neither should summary judgment be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions. . . . Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him.

Phoenix Sav. and Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967) [citations omitted].

In *Phoenix*, the Fourth Circuit relied on American Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214 (4th Cir. 1965), in which the Court of Appeals had earlier stated:

Not merely must the historic facts be free of controversy but also there must be no controversy as to the inferences to be drawn from them. It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment.

354 F.2d at 216.

■ HASCO does not meet this burden because conflicting inferences may readily be drawn from the facts presently before the Court.

The following facts have been brought forth by the parties: The plaintiff was

employed on a full time basis by HASCO for a substantial length of time before December 31, 1969. He then left HASCO for employment as a civilian with the United States Navy until January 1, 1971. Beginning in the spring of 1969, Johnson began receiving offers for specific job assignments with HASCO. Johnson's affidavit asserts that he was under no obligation to accept any offer, that HASCO was not obliged to make such offers, and that the acceptance or rejection of any such offers was completely independent of any future or past employment. Johnson accepted some of these jobs and refused others. (Johnson affidavit) HASCO claims that Johnson only refused offers when he was unavailable for work with HASCO. (HASCO renewal of motion for summary judgment at 12) The defendant interprets this arrangement as the plaintiff's being available "on a part or full-time, as needed, basis." (Carey affidavit) On each occasion the helicopter which Johnson operated was supplied by HASCO.

Plaintiff also states in his affidavit that to the best of his recollection he flew a total of six days for HASCO in 1969 at the rate of $50 per day, and he flew a total of three days for HASCO from January 1, 1970 to December 29, 1970 at the same rate. For at least some of these jobs, no income was withheld by HASCO from Johnson's pay check.

On December 28, 1970, Mr. Alexander Carey, President of HASCO, called Johnson and asked him to operate a helicopter to set light poles along Route 95 in Alexandria, Virginia for Truland Construction Company. This job was part of HASCO's regular business of operating and maintaining helicopters for use in construction work. Johnson agreed to do so on December 30 and 31 for $50 per day. (Johnson affidavit) Defendant HASCO claims that payment was on a "per diem plus expenses" basis and that the job was to last "several weeks." (Carey affidavit)

On December 30, 1970, Johnson operated the helicopter successfully and set up light poles at the site. The plaintiff had full control over the operation of the helicopter and determined when and whether he would fly. He also had complete control of matters of flight safety. He was assisted on the ground by employees of HASCO and the construction company by means of signals. No other supervision of his work was undertaken. The same procedure was followed on December 31, the day the accident occurred. (Johnson affidavit)

For the two days' work, Johnson was paid $60 per day and $15 per day was withheld by HASCO. (Johnson affidavit) Plaintiff also notes that HASCO made notations of deductions for income tax and social security tax on the cancelled pay checks after they were cashed by Johnson. (Plaintiff's second responsive pleading) Four days after the accident, January 4, 1971, HASCO submitted a "Standard Form for Employer's First Report of Injury" to the Workmen's Compensation Commission. The plaintiff also signed and submitted an "Employee's Claim" on February 8, 1971, claiming a right to compensation. (HASCO's first motion for summary judgment) An award was subsequently made, which was then modified and withdrawn at Johnson's request. The plaintiff does not recall filing such a claim. He also asserts that if he did file the claim, it was before retaining an attorney and at the suggestion of Mr. Carey of HASCO. Once Johnson retained an attorney, the claim was withdrawn immediately. (Johnson affidavit)

On these facts, HASCO claims that Johnson was its employee at the time of the accident and that therefore the plaintiff's sole recourse for compensation is to the Workmen's Compensation Commission and not through this suit. The plaintiff argues that he was either an independent contractor at the time of the accident and therefore not within the Workmen's Compensation Act, *see* Bowers v. Eastern Aluminum Corp., 240 Md. 625, 627, 214 A.2d 924 (1965), *or*

that he was a "casual" employee of HASCO and therefore statutorily exempt from the Workmen's Compensation Act, Md.Ann.Code art. 101, § 21(c)(5) (1974 Cum.Supp.).

The law in these two areas need not be extensively elucidated here because even at the most elementary level of the law, the facts of this case are susceptible to diverging inferences.

■ For the purpose of determining whether a person is an independent contractor or an employee, a court in Maryland must take the following factors into consideration:

(1) the selection and engagement of the servant;

(2) the payment of wages;

(3) the power to discharge;

(4) the power to control the servant's conduct;

(5) and whether the work is part of the regular business of the employer.

Keitz v. National Paving and Contracting Co., 214 Md. 479, 491, 134 A.2d 296, 301 (1957). *See also,* Gale v. Greater Washington Softball Umpires Assn., 19 Md.App. 481, 487, 311 A.2d 817, 821 (1973); Williams Constr. Co. v. Bohlen, 189 Md. 576, 580–581, 56 A.2d 694, 696 (1948).

■ The criteria for determining the "casualness" of an employee's status are:

(1) the nature of the work;

(2) the duration of the employment;

(3) whether the employment is occasional, incidental or accidental; and

(4) whether the work is a normal concomitant of the employer's business.

*See* Wood v. Abell, 268 Md. 214, 221–222, 300 A.2d 665, 666 (1973), quoting, Moore v. Clarke, 171 Md. 39, 53, 187 A. 887 (1936).

Both tests are "elastic." Keitz v. National Paving Co., 214 Md. at 491, 134

A.2d at 301; Wood v. Abell, 268 Md. at 223, 300 A.2d at 670.

Under these standards the fact that the plaintiff was a pilot puts the question of control and the nature of the work into a nebulous light. Generally a pilot has the obligation and right to control all matters regarding the operation of his aircraft, especially in matters of safety. 14 C.F.R. § 91.3 (1974). The plaintiff's degree of skill and the complex nature of his machine required him to take a great deal of control over al' parts of the operation in which he was a participant. The degree of control which HASCO exercised over him is therefore difficult to determine and is a question which should be left to the trier of fact.

For these reasons, the case is one in which summary judgment is not appropriate, and the motion is therefore denied.

## REPUBLIC AVIATION CORPORATION'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO TRANSFER

Defendant Republic Aviation Corporation (RAC) is a dissolved Delaware Corporation with its principal place of business in New York. Count I of the complaint, which sounds in negligence, states that the plaintiff's injuries were directly and proximately caused by defendant RAC's negligent assembly, maintenance, marketing and selling of the helicopter and its component parts. The second count alleges that RAC expressly or impliedly warranted that the aircraft and its component parts were airworthy, suitable for their ordinary purposes and the purposes for which they were assembled, marketed, sold and used, and that they were of merchantable quality. The third count, essentially a strict liability count, alleges that the aircraft and its component parts were sold by the defendant RAC in a defective condition unreasonably dangerous to the user.

On October 19, 1972, RAC filed a Motion to Dismiss and to Quash the Return

of Service of Process on the following grounds:

1. Under Federal Rule of Civil Procedure 12(b)(2), the Court lacked jurisdiction over the person of the defendant since:

a. RAC was not subject to the personal jurisdiction under the Maryland Long-arm Statute, Md.Ann.Code, Cts. & Jud.Proc. Art., § 6–103 (1974);

b. RAC was not subject to personal jurisdiction of the Court because of lack of minimum contacts required by the Due Process Clause of the Federal Constitution; and

c. RAC had no corporate existence for the purposes of this suit under Rule 17(b) because it had been dissolved under Delaware law more than three years before the cause of action accrued or was brought;

2. Under Rule 12(b)(4), service of process on the Maryland Department of Assessment and Taxation was insufficient because the Court lacked personal jurisdiction over the defendant as outlined above;

3. Under 12(b)(3) venue did not lie in this District because the plaintiff did not reside in Maryland, the claim did not arise in Maryland, and the corporate defendant RAC was not incorporated, doing business or licensed to do business in Maryland as required by 28 U.S.C. § 1391; and

4. Under 12(b)(6) the complaint did not state a claim on which relief could be granted against RAC because the action was barred by the statute of limitations.

In support of this motion, RAC submitted the affidavit of its present Chief Executive Officer, O. V. Tracy, who stated that RAC had never had an office or plant in Maryland; that it had not done or transacted any business within the State of Maryland within the last seven years; that it had never applied for or obtained a license to do business in Maryland; that it had never solicited business, derived substantial revenue from goods, food, services or manufactured products used or consumed in Maryland; that the only agent, office or employee of the corporation working in the State of Maryland was an assistant secretary who was in the State for the convenience of another employer and who drew checks and made computations with regard to federal tax claims and whose work was unrelated to any other business activity of the defendant in Maryland.

The points raised by RAC in its motion to dismiss resolved themselves into a series of thorough and well-thought briefs on the question of whether RAC had capacity to be sued for personal injuries under Federal Rule of Civil Procedure 17(b) notwithstanding the corporation's dissolution under Delaware law if the cause of action arose during the three-year "winding-up" period provided for in Delaware law but was not brought until after the three-year period had expired, when the corporation was still in existence in order to resolve tax claims with the United States and New York under a proviso of the Delaware Corporation Law which kept it alive for the purpose of concluding such actions commenced within the three-year period. 8 Del.Code Ann. § 278 (1968 Cum.Supp.).

At a hearing on June 1, 1973, the Court dismissed the complaint for lack of capacity to be sued, and final judgment was entered in favor of RAC under Rule 54(b). The plaintiff appealed to the Fourth Circuit, where he alleged that he should have been allowed to proceed with discovery in order to attempt to prove that in spite of dissolution, RAC was doing business in excess of that required for dissolution or liquidation, and that it therefore retained capacity to be sued. Judge Russell, for the Fourth Circuit, correctly treated the disposition of the case at the District Court level as the grant of a Motion to Dismiss for failure to state a claim on which relief could be granted under Rule

12(b)(6).[1] He held that since the Motion to Dismiss was "founded on matters outside the pleadings, the District Court [was] obligated to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56.'" Johnson v. Republic Aviation Corporation, 491 F.2d 510, 513 (4th Cir. 1974), *quoting,* Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). The Court of Appeals then remanded the case to this Court in order to provide the parties a reasonable opportunity to present materials pertinent to a Rule 56 motion, including affidavits and discovery.

On remand the parties were provided a reasonable opportunity for discovery. On August 6, 1974, RAC renewed all motions which it had theretofore raised. In addition, as the result of information gathered through discovery, the plaintiff moved to sever and transfer the action against RAC to the United States District Court for the Southern District of New York.

■ Questions of personal jurisdiction and venue will be resolved first before proceeding to the merits of the case. Arrowsmith v. United Press International, 320 F.2d 219, 221 (2d Cir. 1963) (Friendly, J.). Personal jurisdiction may not be exercised over RAC in this jurisdiction, and since personal jurisdiction and venue both lie in the Southern District of New York, the action should be transferred to that jurisdiction.

## PERSONAL JURISDICTION OVER REPUBLIC AVIATION CORPORATION UNDER THE MARYLAND LONG–ARM STATUTE

Federal Rule of Civil Procedure 4(e) provides, in part, that for the purpose of service upon a party not an inhabitant of or found within the state where the District Court is sitting:

> Whenever a statute or rule of court of the state in which the district court is held provides . . . for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule.

The provisions of the Maryland Long-Arm statute, Md.Ann.Code, Cts. & Jud. Proc. Art., § 6–103 (1974) therefore dictate whether the Maryland Legislature has authorized service of process over a nonresident corporation in a case such as this. *See* Hardy v. Rekab, Inc., 266 F. Supp. 508, 510 (D.Md.1967).

■ In considering personal jurisdiction a court is obliged to determine first, whether personal jurisdiction may be exercised under the state statute, and second, whether the defendant over which personal jurisdiction is exercised under the statute has sufficient contact with the forum state to satisfy due process under the federal Constitution. *See* Haynes v. James H. Carr, Inc., 427 F.2d 700, 703 (4th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970).

■ The plaintiff has urged that personal jurisdiction is satisfied under section 6–103(b)(4) of the Maryland Long-Arm statute:

> (b) * * * A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> * * * (4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the

---

1. The defense of lack of capacity to be sued is properly brought as a 12(b)(6) motion, and, if supported by matters outside the pleadings, should be treated as a motion for summary judgment under Rule 56. Klebanow v. New York Produce Exch., 344 F.2d 294, 296 n. 1 (2d Cir. 1965). *See, generally,* C. Wright and A. Miller, Fed. Prac. and Proc., Civil § 1294, at 395 (1969).

state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state . . . .

Plaintiff argues that RAC has derived substantial revenues from goods or manufactured products used in the state because the helicopter in question. was worth a substantial sum, and that this result is dictated by the Fourth Circuit's decision in Ajax Realty Corp. v. J. F. Zook, Inc., 493 F.2d 818 (4th Cir. 1972).

A careful reading of that case shows that it does not support the plaintiff's position. In *Ajax*, the defendant corporation, incorporated in the State of Washington, was sued in Virginia. The defendant had never been licensed to do business, had never maintained manufacturing, sales or other business facilities in the State, had never advertised, solicited or contracted for sales in Virginia, and had never distributed its product or maintained an agent in the State. Its major contacts were with a distributor in Colorado. Nevertheless in the sale which gave rise to the case, involving $37,000 of the defendant's products, the distributor sold the corporation's frames to the plaintiff Virginia corporation; at the request of the distributor, the defendant shipped the manufactured product directly to the consumer in Virginia.

Section 8–81.2(a)(5) of the Virginia Long-Arm statute, Va.Code Ann. § 8–81.2(a)(5) (1974 Cum.Supp.), authorizes personal jurisdiction over a corporation if the cause of action arises from the corporation's

(5) *Causing injury in this State* to any person by breach of warranty expressly and impliedly made in the sale of goods outside this State *when he might reasonably have expected such*

*person to use, consume, or be affected by the goods in this State, provided that he also* regularly does or solicits business, or engages in any other persistent course of conduct, or *derives substantial revenue from goods used* or consumed or services in this State. [Emphasis added]

The thrust of section 8–81.2(a)(5) is substantially different than that of section 6–103(b)(4) of the Maryland Long-Arm statute. The Virginia enactment is the product of "legislative self-interest" as described by Wright and Miller:

On the surface, state long-arm . . . statutes appear to be examples of legislative self-interest. In part they represent attempts by one state to provide a litigation forum for the convenience of its own citizens at the expense of citizens of other states. . . . [Most] observers agree that the statutory trend is a healthy one in a mobile, industrialized society that effectively has reduced the time and rigors of travel.

4 C. Wright and A. Miller, Fed.Prac. and Proc., Civil § 1068 at 243 (1969).[2] The statute is founded on the assumption that both the plaintiff and the defendant would have some contact with the forum state. First (for the purpose of this litigation), the defendant must have derived revenues from goods used in the state. Second, the injury must have occurred in the state. And third, the defendant must have reasonably believed that the product would be used within the forum state. If these contacts with the forum state are satisfied, then one act such as that in *Ajax* could provide the nexus required for personal jurisdiction.

**2.** Likewise, the preamble to Chapter 769 of the 1971 Acts of Maryland which amended section 96 to add "or outside of this State" to the language of subsection (a)(4) [now (b)(4)] shows the focus of the law to be the protection of Maryland residents from the activities of nonresidents. Furthermore, although subsection (a)(4) has been amended to comprehend tortious injury outside of Maryland caused by an act or omission outside of Maryland and the section does not appear to cover a nonresident injured outside the State, the core case originally envisioned is that of the Maryland resident, injured in Maryland, where the source of the wrong rests outside the State.

Both the facts and the law in this case are distinctly different from those of *Ajax*. The Maryland statute provides that if jurisdiction is based upon the statute, the cause of action must arise out of the action on which jurisdiction is based. Nevertheless, injury may occur *outside* the state, and does *not* require a reasonable expectation that the goods must be used in the state. In addition, the defendant here actually had no such expectation. The record shows that on October 20, 1959, as the result of a transaction in New York, the helicopter in question was sold to Coast Rotors, Inc., a California corporation. At the time of sale RAC had no notice or expectation that the product would ultimately be sold to a Maryland user. Since that time RAC has had no contact with the aircraft.

Under these circumstances, a more substantial degree of contact with the forum state would be required under the Maryland statute than under the Virginia statute. Although dictum in certain cases has indicated that the Maryland Legislature intended the Maryland Long-Arm statute to extend to the fullest extent allowed by the Constitution, *see e. g.,* Gilliam v. Moog Industries, Inc., 239 Mo. 107, 111, 210 A.2d 390, 392 (1965); Lawson v. Baltimore Paint & Chem. Corp., 298 F.Supp. 373, 377 (D.Md.1969), this case exceeds the limits of the Maryland statute and the Constitution by a considerable margin.[3]

■ Where a defendant has never conducted any business or applied for a license to do business in the forum state; where it has never solicited business or derived substantial revenues from goods or services within the state; where it has not had a reasonable expectation that its products would be used in the state; where plaintiff is not a resident in the state; and where the injury giving rise to the cause of action occurred outside the state, personal jurisdiction may not be exercised over the defendant under section 6–103(b)(4) of the Maryland Long-Arm statute.[4]

In any case, substantially greater contact by the defendant with the forum state would be required to satisfy the "minimum contacts" test of the Constitution, as measured by "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ To achieve "fair play and substantial justice," due process demands an evaluation of the contacts of the defendant with the forum state, the relationship of the forum to the particular cause of action, the interest of the forum state in protecting its citizens or collecting its fair revenue, and the impact of the proper choice of law on the adjudication. Hanson v. Denckla, 357 U.S. 235, 250–253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957); McGee v. International Life Ins. Co., 355 U.S. 220, 222–224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Perkins v. Benguet Mining Corp., 342 U.S. 437, 444–447 (1952); International Shoe Co. v. Washington, 326 U.S. 310, 317–319, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Ratliff v. Cooper Laboratories, 444 F.2d 745 (4th Cir. 1971). *See generally,* Von Mehren and Trautman, Jurisdiction to Adjudicate; A Suggested Analysis, 79 Harv.L.Rev. 1121 (1966).

---

3. The Court notes that the only contact of the defendant with Maryland was residence by an Assistant Secretary of the corporation who performed computations relating to tax cases pending with the United States and New York, and who resided in the State for the convenience of his other employer. Generally actions of an independent contractor with limited power to act for or on behalf of a corporation do not constitute "doing business." Burchett v. Bardahl Oil Co., 470 F. 2d 793 (10th Cir. 1972); Missouri: Simpkins v. Council Mfg. Corp., 332 F.2d 733 (8th Cir. 1964). *See also* International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

4. Likewise, personal jurisdiction does not exist under subsections 6–103(b)(1) and (2) of the Long-Arm statute.

In Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745 (4th Cir. 1971), Judge Craven, analyzing the South Carolina Long-Arm statute, stated:

> If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it . . . ." [Emphasis in original]

444 F.2d at 748, *quoting,* F. James, Civil Procedure 640 (1965). This reasoning is supported by Judge Winter's language in the *Ajax* case to the effect that although the defendant had few contacts with the forum state, where the statute *required* and where the defendant *actually had* a reasonable expectation that its products would be used in the state,

financial contacts had occurred which were sufficient to satisfy the minimum contact test. This statement implied its negative: where the statute did not so require, the same financial contacts would be insufficient to satisfy the constitutional test. This is the case here.[5]

Where a defendant allows its products to be marketed in a state, the state certainly has a right to give its citizens jurisdiction over the offending corporation in the state of injury. But where, as here, neither plaintiff nor defendant is a resident of the state, the cause of action did not arise in the forum state, the defendant's contact with the state was neither foreseeable nor substantial, and the Court would apply the law of another state were it to adjudicate the case, "fair play and substantial justice" require that the Court

---

5. The case of Beaty v. M. S. Steel Co., Inc., 276 F.Supp. 259 (D.Md.1967), aff'd, 401 F. 2d 157 (4th Cir. 1968), cert. denied, 393 U. S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969), which construes the Maryland Long-Arm statute, is analogous to the case at hand with the notable exception that the injury in that case occurred in Maryland. In addition, the provisions of the Long-Arm statute under consideration there have since been amended to include "goods" and "manufactured products." Nevertheless, the Court finds the case appropos. In *Beaty* plaintiffs employed as iron workers were working on fabricated bar joists which collapsed, injuring them. The defendant Alabama corporation which had manufactured the bar joists was not licensed to do business in Maryland, and there was no allegation that it had ever done so. Nor had the defendant ever sent its representatives to supervise installation or maintenance of its products as in Hardy v. Rekab, Inc., 266 F.Supp. 508 (D.Md.1967). Judge Harvey found in *Beaty* that personal jurisdiction over the defendant could not be exercised:

> It would offend traditional notions of fair play and substantial justice to hold that a non-resident corporation could be sued in Maryland merely because on one occasion its product manufactured in another state was shipped into and used within this state. As the Supreme Court said in Hanson v. Denkla [357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]: "The unilateral activity of those who claim some relationship with a non-resident de-

fendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

276 F.Supp. at 263.

In addition, Judge Harvey refused to apply the reasoning of Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), to the Maryland statute. In *Gray* service was allowed on an Ohio corporation which had manufactured a water heater safety valve in Ohio and had sold it to a Pennsylvania firm. The heater had been assembled and exploded, injuring the plaintiff, in Illinois. The idea of "minimum contact" was stretched to its limit. This Court finds *Gray* inapplicable to the case at hand, however, since in that case the tort occurred in the forum state and involved a forum-state resident, in addition to involving an altogether different provision of the Illinois Long-Arm statute. In contrast, as indicated above, where this Court would apply Virginia law in adjudicating the claim, neither plaintiff nor defendant is a citizen of the state and the tort occurred outside its jurisdiction, the forum has little interest in the litigation. See 7 C. Wright and A. Miller, Fed. Prac. and Proc., Civil ¶ 1609, at 260–62 (1972).

refuse to exercise personal jurisdiction over the defendant.[6]

## TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

RAC has also raised a timely objection to improper venue. In conjunction with the holding above regarding personal jurisdiction, it becomes evident that venue is improper in this jurisdiction under 28 U.S.C. § 1391 because RAC is neither incorporated, nor licensed to do business, nor doing business in Maryland.

Since venue is improper, the court may either dismiss the action as to RAC, or sever and transfer the action in accordance with the plaintiff's motion to transfer under 28 U.S.C. § 1406(a). That section states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The issue of whether a court may transfer a case in which it has no personal jurisdiction over the defendant must be addressed first. The case of Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), is conclusive on this point. In that case, an antitrust action was brought against several defendants who then moved to dismiss on grounds of lack of personal jurisdiction and improper venue. The district court found that jurisdiction and venue were improper, and transferred the action under 28 U.S.C. § 1406(a) to a district where both personal jurisdiction and venue were proper. The Supreme Court upheld transfer of the action notwithstanding the fact that the transferor court had had no personal jurisdiction over the defendants. The

Court reasoned that this result was consonant with the purpose of the transfer section, which was to avoid injustice which resulted when a plaintiff made an erroneous guess as to the elusive facts upon which venue depends. In addition, the legislative history of the section did not indicate that the operation of the section was to be limited to instances in which the transferring court has personal jurisdiction. The Court concluded:

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply.

369 U.S. at 466–467, 82 S.Ct. at 916.

▮▮ The situation here is comparable. By filing in this Court, the plaintiff sought to gather all its defendants together in one forum and to begin to litigate the case against them in good faith. Now that discovery has occurred, the plaintiff has determined that personal jurisdiction over RAC does not exist in this district; it therefore wishes to move the action against RAC to a court in which that action could have been brought. Assuming that the requisite tests for transfer under 28 U.S.C. § 1406(a) are met, this is an appropriate case for transfer under that section notwithstanding lack of personal jurisdiction over the defendant in this district.

---

6. Personal jurisdiction may not be exercised over the defendant notwithstanding the fact that this is complex multi-party litigation. Although concepts of personal jurisdiction may be somewhat antiquated, where the constitutional requirements are not met, a court may not extend personal jurisdiction where Congress and the states have not authorized its exercise, even for the purpose of efficient judicial administration.

In accordance with the settled principles, in order to transfer this case to the United States District Court for the Southern District of New York, this Court must find that the transfer is in the "interest of justice," that the transferee court has subject matter jurisdiction over the action, and that personal jurisdiction and venue are proper in the Southern District of New York. *See* 1 J. Moore, Fed. Prac. ¶ 0.146[5], at 1910 (1973 Cum.Supp.).

First, transfer is proper when the rather nebulous statutory standard of the "interest of justice" is met. Generally, transfer is warranted under this test when dismissal would terminate the action because the appropriate statute of limitations would have run in the alternative forum, barring the institution of a new action, Dubin v. United States, 380 F.2d 813, 815 (5th Cir. 1967). Such is the case here. At least for the purpose of the negligence claim, the cause of action in this case arose on the date of injury, December 31, 1970. The plaintiff filed his claim in this Court on August 14, 1972, well within the appropriate statute of limitations. Nevertheless, were the plaintiff forced to bring a new action in the Southern District of New York, that action would be barred by limitations. Where the plaintiff has made a timely filing in this Court which indicated his desire to toll the statute of limitations, this Court will not terminate the action because of "justice-defeating technicalities." [7]

Second, the United States District Court for the Southern District of New York does have subject matter jurisdiction over the action, since diversity jurisdiction exists in that district. 28 U.S.C. § 1332. The plaintiff has alleged that it is a citizen of Virginia and that RAC is a resident of the State of New York. In addition, the plaintiff's initial allegation of damages in its complaint before this Court is in excess of the jurisdictional amount and is valid for the purpose of establishing subject matter jurisdiction in the New York court.

Third, this Court may transfer the action only to a court in "which [the action] could have been brought." Smith v. Murchison, 310 F.Supp. 1079, 1089–1090 (S.D.N.Y.1970). This provision is correctly interpreted as requiring that the transferee court must have personal jurisdiction and venue before the case may be transferred. To determine these questions, it is appropriate to turn to the law as it would be applied by the District Court in New York.

That court would have personal jurisdiction over RAC if it determined in the affirmative the amenability to suit of a foreign corporation which had dissolved itself in its parent state (Delaware) but as yet had not forfeited its license in the foreign state (New York) because it was "winding up" its affairs in the foreign state. A recent case on point, Robfogel Mill-Andrews Corp. v. Cupples Co., Mfgrs., 67 Misc.2d 623, 323 N.Y.S. 2d 381 (Sup.Ct. Monroe Co. 1971), is indicative, although not conclusive, of New York law in this area. That case held that a defendant which had never transacted business but which had obtained but never surrendered a certificate of authority to do business in New York was amenable to personal jurisdiction in the state notwithstanding the fact that the cause of action arose in another state. The New York court held that the New York Long-Arm statute was inapplicable to the case, and turned instead to § 301 of the New York Code of Civil Practice Law and Rules, N.Y.Civ. Prac.Law § 301 (McKinney 1972), which provides that "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Under certain sec-

---

7. In this regard, the Court finds that the plaintiff is not guilty of delay in pursuing its motion to transfer. The plaintiff filed in a court which it hoped would be able to exercise personal jurisdiction over all defendants in the action. Once it appeared that this was impossible, the plaintiff filed for transfer of the action to the appropriate United States District Court. No prejudice to the defendant has occurred.

tions of the Civil Practice Laws in effect before the New York Long-Arm statute was passed, personal jurisdiction was authorized over a foreign corporation even though the cause of action arose outside the state and was not connected with business transactions in the state.[8]

Bagdon v. Philadelphia & Reading Coal & Iron Co., 217 N.Y. 432, 111 N.E. 1075 (1916); Karius v. All States Freight, Inc., 176 Misc. 155, 158, 26 N.Y.S.2d 738, 741 (1941), and even though the authorized foreign corporation had never transacted business within the state, Aaron v. Agwilines, Inc., 75 F. Supp. 604, 606 (S.D.N.Y.1948). This case law remained in effect as the result of the enactment of section 301 notwithstanding new provisions of the new Business Corporation Law or Civil Practice Laws. Potter's Photographic Applications Co., Inc. v. Ealing Corp., 292 F. Supp. 92, 99 (E.D.N.Y.1968).

> The Robfogel court stated:
>
> The defendant admits in its moving papers that a certificate of authority to do business in New York State was filed in 1917 and that the certificate is still in effect, although the corporation no longer does business in New York. As long as the certificate and the designation of the Secretary of State as agent to receive process remain in effect, the defendant is subject to personal service by delivery of process to the Secretary of State.

67 Misc.2d at 624–625, 323 N.Y.S.2d at 383. Since RAC admits in its pleadings that it received authorization to do business in New York in 1930 and has never surrendered or otherwise terminated that license, it is amenable to personal jurisdiction in New York under the Robfogel case. Other case law in New York, although not completely analogous to this case, is persuasive. In Trounstine v. Bauer, Pogue & Co., Inc., 44 F.

Supp. 767 (S.D.N.Y.1942), aff'd, 144 F. 2d 379 (22 Cir.) cert. denied, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944), a corporation organized in Delaware and dissolved there was also licensed to do business in New York for the purpose of liquidating its assets, discharging its liabilities and defending suits against it under the "winding up" provisions of Delaware law. The District Court held that where the cause of action arose in New York and the plaintiff had sued within the three-year winding up period prescribed by Delaware law, personal jurisdiction over the defendant corporation could be exercised.

■■■ Although the Trounstine case is distinguishable from the one at bar, it indicates the willingness of New York courts to exercise personal jurisdiction over a corporation when it is dissolved in its parent state and is winding up its business in New York under its certificate of authority to do business in that state. Under the rationale of Trounstine and Robfogel, then, this Court finds that the New York courts would have exercised personal jurisdiction over this defendant had the case originally been brought in that jurisdiction.

In addition, New York courts might also exercise personal jurisdiction over RAC under N.Y.Civ.Prac.Law § 302(a)(1) and (2), which provides for service over a non-resident if its transacts any business in the state or commits a tortious act within the state if the cause of action arises from that business or act.

The inquiry into personal jurisdiction does not end here. Certain commentators have raised serious questions as to whether the Robfogel court overemphasized the jurisdictional importance of receiving a certificate of authority to do business and consequently failed to question the contacts of the corporation with the state as necessary

---

8. This is also true today under the New York Long-Arm statute, N.Y.Civ.Prac.Law § 302 (McKinney 1972). Erving v. Virginia Squires Basketball Club, 349 F.Supp. 709, 712 (E.D.N.Y.1972; Potter's Photographic Applications Co., Inc. v. Ealing Corp., 292 F.Supp. 92 (E.D.N.Y.1968).

to satisfy the requirement of due process under the Constitution. Birnbaum, Civil Practice, in 1972 Survey of New York Law: Part Five-Adjective Law, 24 Syracuse L.Rev. 447, 459 (1973). *See* discussion at pages 520–522, *supra.*

 While that question is moot as to the *Robfogel* case, this Court must satisfy itself that notwithstanding the fact that New York courts would exercise jurisdiction over the defendant, the defendant has sufficient contacts with the state to fulfill the minimum contacts test.

 That requirement is thoroughly satisfied here. Although RAC was originally incorporated in Delaware, during its years as an ongoing enterprise, its principal place of business and its focus of operations was in New York State. In addition, the original sale of the helicopter in question was made in Suffolk County, New York.

Personal jurisdiction could therefore have been exercised in New York. In addition, it is clear that venue is satisfied because RAC is presently licensed to do business in the State of New York. 28 U.S.C. § 1391(c).

Severance of the cause of action against RAC, including third party claims, is appropriate here under Federal Rule of Civil Procedure 21 since no single jurisdiction has venue over all defendants. 3A J. Moore's Fed.Prac., ¶ 21.05[2], at 21–28 (2d ed. 1974).[9]

 Mention should be made of the capacity issue. This Court should not go beyond the matters of personal jurisdiction and venue to decide the question of capacity.[10] *Cf.* Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963). Before a court may transfer an action it must determine whether it has personal jurisdiction and venue over the parties and whether the transferee court would have had personal jurisdiction and venue over the parties had the action originally been filed in that court. Capacity is an entirely different genre of question which should be raised before the transferee court in conjunction with a 12(b)(6) motion going to whether the plaintiff has stated a claim on which relief may be granted. That issue should and will be reserved for the New York court.

Accordingly, it is this 20th day of December, 1974, by the United States District Court for the District of Maryland, ORDERED:

1. that the plaintiff's motion for leave to amend his complaint be, and the same is, hereby granted;

2. that the defendant Helicopter and Airplane Services Corporation's motion for summary judgment be, and the same is, hereby denied; and

3. that the plaintiff's motion to sever and transfer its cause of action against defendant Republic Aviation Corporation to the United States District Court for the Southern District of New York be, and the same is, hereby granted.

9. Although capacity is determined by reference to the law of the state of incorporation, Delaware, it is conceivable that the district court in the Southern District of New York may have to turn to New York law to determine whether RAC has capacity to be sued under the rationale of Dr. Hess & Clark, Inc. v. Metalsalts, Corp., 119 F.Supp. 427 (D.N.J.1954). In this case, the New York court would have more expertise in construing New York law on this issue.

10. Upon an appropriate motion the Court will transfer third party claims against RAC to the Southern District of New York.